**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

| | |
|---|---|
| CITIZENS UNITED AGAINST CORRUPT GOVERNMENT, | |
| Plaintiff, | Adv. Case No. 14-05059 |
| v. | |
| DETROIT CITY COUNCIL, | |
| Defendant. | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant/Debtor, pursuant to Bankruptcy Rule 7056 and Fed. R. Civ. Pro. 56, moves this Court to grant summary judgment and dismiss the instant matter in its entirety with prejudice on the grounds that there is no genuine dispute as to any material fact and Defendant is entitled to judgment as a matter of law for the reasons set forth in the accompanying brief. On October 22, counsel for Defendant conferred with counsel for Plaintiff regarding the nature of this Motion and Plaintiff has not concurred in the relief sought, making this Motion necessary.

WHEREFORE, Defendant respectfully requests that the Court grant summary judgment in favor of Defendant, deny Plaintiff's claims for declaratory and injunctive relief and attorney fees and dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

By: /s/ Marc N. Swanson

Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
swanson@millercanfield.com
green@millercanfield.com

Charles N. Raimi (P29746)
Deputy Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Coleman A. Young Municipal Center
Detroit, Michigan 48226
Telephone: (313) 237-5037
Facsimile: (313) 224-5505
raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

Dated: October 22, 2014

EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |
| ________________________________/ | |
| CITIZENS UNITED AGAINST CORRUPT GOVERNMENT, | |
| Plaintiff, | Adv. Case No. 14-05059 |
| v. | |
| DETROIT CITY COUNCIL, | |
| Defendant. | |
| ________________________________/ | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter coming before the Court on the Defendant's Motion for Summary Judgment ("Motion"); and the Court being fully advised in the premises;

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED;

2. The Plaintiff's claims for declaratory and injunctive relief and attorneys' fees are denied; and

3. The Plaintiff's complaint is dismissed with prejudice.

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |
| ________________________________/ | |
| CITIZENS UNITED AGAINST CORRUPT GOVERNMENT, | |
| Plaintiff, | Adv. Case No. 14-05059 |
| v. | |
| DETROIT CITY COUNCIL, | |
| Defendant. | |
| ________________________________/ | |

## NOTICE OF OPPORTUNITY TO RESPOND TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Detroit City Council has filed papers with the Court, asking the Court to grant summary judgment in this matter, as described in the foregoing Defendant's Motion For Summary Judgment ("Motion").

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to enter an order granting summary judgment in this matter, or if you want the court to consider your views on the Motion, within fourteen (14) days, you or your attorney must:

1. File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 West Fort Street
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above. All attorneys are required to file pleadings electronically.

You must also mail a copy to:

Marc N. Swanson
Miller, Canfield, Paddock & Stone, PLC
150 W. Jefferson, Suite 2500
Detroit, MI 48226

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e)

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

Dated: October 22, 2014

Respectfully submitted,

By: /s/ Marc N. Swanson

Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
swanson@millercanfield.com
green@millercanfield.com

Charles N. Raimi (P29746)
Deputy Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Coleman A. Young Municipal Center
Detroit, Michigan 48226
Telephone: (313) 237-5037
Facsimile: (313) 224-5505
raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

EXHIBIT 3

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

_________________________________/

CITIZENS UNITED AGAINST
CORRUPT GOVERNMENT,

| | |
|---|---|
| Plaintiff, | Adv. Case No. 14-05059 |

v.

DETROIT CITY COUNCIL,

Defendant.
_________________________________/

**BRIEF IN SUPPORT OF DEFENDANT/DEBTOR'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS .......... i
TABLE OF AUTHORITIES .......... ii
LIST OF EXHIBITS .......... iv
ISSUES PRESENTED .......... v
INTRODUCTION .......... 1
FACTUAL BACKGROUND .......... 2
ARGUMENT .......... 6
I. STANDARD FOR REVIEW .......... 6
II. CITY COUNCIL PROPERLY WENT INTO CLOSED SESSION. .......... 7
A. Material Exempt From Disclosure By State Or Federal Statute .......... 7
1. The Michigan Freedom of Information Act .......... 7
2. This Court's Mediation Order .......... 8
B. Material Exempt From Disclosure Due To Pending Litigation .......... 9
III. THIS COURT'S REVIEW OF ATTORNEY-CLIENT-PRIVILEGED DOCUMENTS IN CAMERA IS APPROPRIATE AND WILL CONFIRM THAT THE COUNCIL MEETING WAS PROPERLY CLOSED. .......... 10
IV. THE BROAD INJUNCTIVE RELIEF SOUGHT BY PLAINTIFF IS NOT WARRANTED. .......... 13
CONCLUSION .......... 15

# TABLE OF AUTHORITIES


**Page(s)**

**Federal Cases**

*Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)....................................6

*Grochocinski v. Rieger (In re KJK Constr. Co.)*, 414 B.R. 416 (Bankr. N.D. Ill. 2009) ....................................6

*Smith v. Heyns*, 2:12-CV-11373, 2013 WL 1163172 (E.D. Mich. Jan. 10, 2013) ..........................6

*Wavecom Solutions Corp. v. Verizon Haw. Int'l, Inc.*, No. 11-00337, 2011 WL 5374428 (D. Haw. Nov. 7, 2011) (unpub)....................................6

**State Cases**

*Berryman v. Madison School District*, 2007 WL 549230 (Mich. Ct. App. Feb 22, 2007) ....................................8

*Booth Newpapers, Inc. v. Regents of University of Michigan*, 93 Mich. App. 100; 286 N.W.2d 55 (1979) ....................................7

*Booth Newspapers, Inc. v. Wyoming City Council*, 168 Mich. App. 459; 425 N.W.2d 695 (1988) ....................................1, 7, 8, 11

*Detroit News v. City of Detroit*, 185 Mich. App. 296; 460 N.W.2d 312 (1990) ...........................11

*Kubiak v. Hurr*, 143 Mich. App. 465; 372 N.W.2d 341 (1985) ....................................9

*Manning v. City of East Tawas*, 234 Mich. App. 244 (1999)....................................12

*Moore v. Fenville Public Schools Board of Education*, 223 Mich. App. 196; 566 N.W.2d 31 (1997) ....................................12

*Nicholas v. Meridian Charter Township Board*, 239 Mich. App. 525, 609 NW2d 574 (2000)....................................13, 14

*Schmiedicke v. Clare School Board*, 228 Mich. App. 259, 577 N.W.2d 706 (1998)....................14

*Wilkins v. Gagliardi*, 219 Mich. App. 260, 556 N.W.2d 171 (1996) ....................................13

**Federal Statutes**

Freedom of Information Act ....................................7, 11

**State Statutes**

Local Financial Stability and Choice Act, 2012 ....... 2

M.C.L. § 15.263(3) ....... 12

M.C.L. § 15.268(c) ....... 12

M.S.A. § 4.1800(13)(3) ....... 12

M.S.A. § 4.1800(18)(c) ....... 12

MCL 141.1541 *et seq.* ....... 2

MCL § 15.243(1)(g) ....... 7

MCL § 15.267 ....... 10

MCL § 15.268(e) ....... 7, 9

MCL § 15.268(h) and (ii) ....... 7

MCL § 25.268 ....... 10

MCLA § 15.267(2) ....... 10

Open Meetings Act ....... *passim*

Receivership under Public Act 436 ....... 15

**Federal Rules**

Bankruptcy Rule 7056 ....... 6

Fed. R. Civ. P. 56(c) ....... 6

Fed. R. Civ. P. 12(a) ....... 6

Fed. R. Civ. P. 56(b) ....... 6

**Other Authorities**

10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 2718 (3d ed. 2014) ....... 6

## LIST OF EXHIBITS

EXHIBIT 1: Transcript of Hearing On Emergency Motion for Relief From Stay 09.29.2014

EXHIBIT 2: Detroit City Council Formal Session 09.23.2014

EXHIBIT 3: Resolution with Roll Call 09.23.2014

EXHIBIT 4: *Berryman v. Madison School District*, 2007 WL 549230 (Mich. Ct. App. Feb 22, 2007)

## ISSUES PRESENTED

I. Whether City Council Properly Went Into Closed Session Under the Open meetings Act ("OMA") where:

A. Council's written motion to go into closed session properly cites OMA Section 8(h), the closed sessions were called to discuss written attorney-client privileged legal opinions and were transcribed in their entirety; and,

B. the closed sessions were called to discuss the transition of the emergency manager and cessation of the City's receivership under Act 436 and the effect of these events on the pending bankruptcy litigation and successful consummation and implementation of the City's Plan of Adjustment and included consultations with Bankruptcy Mediator Hon. Gerald Rosen;

Defendant states: "Yes"
Plaintiff states: "No"

II. Whether *In camera* review of the attorney-client privileged opinions of counsel and the transcripts of the closed sessions is appropriate where the discussions in the closed sessions are protected by attorney-client privilege, by this Court's Mediation order and by the OMA.

Defendant states: "Yes"
Plaintiff has not yet addressed this question

III. Whether disclosure and publication of privileged documents and transcripts protected by attorney-client privilege, by this Court's Mediation order and by the OMA is an appropriate remedy even if technical or substantive violations of the OMA are found.

Defendant states: "No"
Plaintiff has not yet addressed this question

IV. Whether Plaintiff is entitled to the broad declaratory and injunctive relief sought where there is no evidence of an existing OMA violation and there exists no imminent danger of future violations.

Defendant states: "No"
Plaintiff states: "Yes"

## INTRODUCTION

In its Complaint against the Detroit City Council ("Council"), Citizens United Against Corrupt Government ("Plaintiff") requests declarative and injunctive relief due to a purported violation of the Open Meetings Act ("OMA"). There is no genuine dispute as to any material fact: Council's motion to go into closed session is embodied in a public resolution, the attorney-client privileged legal opinions which prompted the closed sessions are in writing; the closed session proceedings included consultations with key bankruptcy mediators (the Hon. Gerald Rosen and Eugene Driker), whose comments framed much of the ensuing discussions; the closed sessions were transcribed in their entirety; and the actions of Council, the Mayor, and the Emergency Manager immediately following the closed session are directly related to the subject matter identified in the public resolution closing the proceedings. In addition, and as part of the discussion of the legal opinion, the closed session involved significant interplay with the mediators appointed by this Court on topics inextricably intertwined with successful consummation and implementation of the City's Plan of Arrangement. The predicate for the meeting was, in substantial measure, whether Mr. Orr should continue as Emergency Manager for completion of the bankruptcy case and what would be the consequences to the case if he were removed from his position.

This Court can resolve this case in its entirety by reviewing *in camera* the

legal opinions for which Council went into closed session and the transcripts of the closed session. As discussed more fully below, Council's actions in going into closed session on September 23, 2014 were in compliance with the requirements of the OMA and summary judgment is appropriate.

## FACTUAL BACKGROUND

The City is the Debtor in the largest and in many ways the most complex municipal bankruptcy case to date. The bankruptcy resulted from the City being placed into receivership pursuant to Michigan's Local Financial Stability and Choice Act, 2012 PA 436, MCL 141.1541 *et seq.* ("Act 436"), with Kevyn Orr appointed as Emergency Manager pursuant to Section 9 of that Act. Pursuant to Section 9(6)(c), the Emergency Manager's appointment was terminable by Council action eighteen months after his appointment.

As the Council determined, the Emergency Manager's continued participation in the bankruptcy proceedings has been viewed by this Court as critical to successful conclusion of the proceedings. The scale and complexity of debt, as well as the scope and competing interests of the City's many and varied creditors, have required sensitive and difficult negotiations. These negotiations have been overseen by federal mediators, including Chief Judge Gerald Rosen and Eugene Driker. The extreme sensitivity of all matters in the mediation process, as well as the breadth of the protection of the process, are recognized in paragraph 4

of the Court's Mediation Order of August 8, 2013 ("Mediation Order") (Dkt #322), which states, "**All** proceedings, **discussions**, negotiations and writings **incident to mediation** shall be privileged and confidential and shall not be disclosed, filed or placed in evidence."

On September 22, 2014, as Kevyn Orr's term as Emergency Manager reached the eighteen month mark, Council President *Pro Tempore* George Cushingberry, Jr. requested an opinion from City Corporation Counsel, Melvin Hollowell. Corporation Counsel Hollowell's opinion was rendered the same day, as was that of the Council's Legislative Policy counsel, David Whitaker. [1]

On September 23, 2014 Council passed a resolution, brought by Council Member Spivey, scheduling a closed session for Tuesday, September 23 at 2:00 PM:

> …for the purpose of consulting with attorneys from the law Department, the City Council Legislative Policy Division and any other indispensable parties to discuss privileged and confidential communications and legal memoranda from the Law Department dated September 22, 2014 entitled "P.A. 436 *Transition Matters*".

[1] The request for opinion, as well as Corporation Counsel's and Legislative Policy Division opinions, are privileged and the City has not waived its privilege with respect to these documents. They are, however, being provided to the Court for *in camera* review along with the meeting transcripts.

(Exhibit 2, Detroit City Council Formal Session Tuesday September 23, 2014, ¶9; emphasis in original). The text of the resolution as adopted by roll call vote states:

> "**Resolved**, in keeping with the requirements of the Open Meetings Act, MCL 15.268(h), a closed session of the Detroit City Council is hereby called for September 23, , 2014 AT 2:00 P.M., for the purpose of consulting with attorneys from the law Department, the City Council Legislative Policy Division and any other indispensable parties to discuss privileged and confidential communications and legal memoranda from the Law Department dated September 22, 2014 entitled "P.A. 436 *Transition Matters"*.

(Exhibit 3, Resolution and Roll Call; emphasis in original).

The closed meeting extended over the following two days, September 24 and September 25. In addition to Council members and their staff, Mr. Hollowell and Mr. Whitaker, also present at various times were Bankruptcy Mediators Hon. Gerald Rosen and Eugene Driker, Mayor Michael Duggan, and Kevyn Orr. Judge Rosen and Mr. Driker were present at the initial session in their capacity as mediators under the bankruptcy proceeding. Written transcripts were taken at all the closed sessions.[2]

---

[2] As is discussed *infra*, it is Defendant/Debtor's position that the Council sessions were properly closed and are protected by the attorney-client privilege and this Court's Mediation Order. The City has not waived its privilege with respect to these documents. The transcripts are being provided to the Court for *in camera* review.

Council's ultimate decisions regarding the Emergency Manager's removal and the City's receivership status were proposed and adopted in a formal open session on September 25, 2014 and were rendered in a written resolution on that date. Notice and a copy of this resolution and related documents were filed by the City with this Court shortly thereafter (September 26, 2014 Joint Notice of Transition Plan, Dkt # 7671, Exhibit A). The Resolution recognizes that the Emergency Manager's departure at this time places at risk the bankruptcy litigation, the City's currently pending Plan of Adjustment and future modification thereof, and the successful conclusion of the bankruptcy proceeding. Therefore, Council's Resolution provides for an extension of the Emergency Manager's tenure while providing for an orderly transition of governmental powers from the Emergency Manager to the City's elected officials:

> The City Council supports the confirmation and implementation of a Plan of Adjustment and recognizes that, with the bankruptcy proceedings still ongoing, the smooth completion of those proceedings could benefit from a short extension of the Emergency Manager's term until the Effective Date of the Plan of Adjustment (as such term is defined therein) for the limited purpose of doing those acts necessary to achieve confirmation and implementation of the Plan of Adjustment and for the successful conclusion of the bankruptcy proceeding;
>
> ***
>
> Consistent with Section 9(2) of Act 436, the Emergency manager will authorize the Mayor and City Council to exercise all powers of those offices, *provided, however*, that the Emergency manager will retain those Act 436 responsibilities,

> powers and duties that are necessary for the Emergency Manager to successfully achieve confirmation and implementation of the plan of Adjustment and conclude the Bankruptcy Proceeding;

(*Id.*).

## ARGUMENT

### I. STANDARD FOR REVIEW[3]

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), made applicable to an adversary bankruptcy proceeding by Bankruptcy Rule 7056. The 1963 Advisory Notes which accompany Rule 56(c) emphasize, "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." "The burden on the moving party may be discharged by showing that there is an absence of evidence to support the non-moving party's case." *Celotex v.*

---

[3] Since the first response to the complaint is a motion under Rule 56(b), no answer is necessary. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 2718 (3d ed. 2014) ("[A] summary-judgment motion made prior to answer should have the benefit of the Rule 12(a) language tolling the period of time in which an answer must be filed."); *Smith v. Heyns*, 2:12-CV-11373, 2013 WL 1163172 (E.D. Mich. Jan. 10, 2013) *report and recommendation adopted*, 12-11373, 2013 WL 1155568 (E.D. Mich. Mar. 20, 2013) (Edmunds, J.); *Wavecom Solutions Corp. v. Verizon Haw. Int'l, Inc.*, No. 11-00337, 2011 WL 5374428 at *4-5 (D. Haw. Nov. 7, 2011) (unpub) (citing *Invst Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 814 F.2d 391, 404 (6th Cir. 1987)); *Grochocinski v. Rieger (In re KJK Constr. Co.)*, 414 B.R. 416, 422 n.3 (Bankr. N.D. Ill. 2009).

*Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has made this showing, the burden passes to the non-moving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact. *Id.* at 588, 106 S.Ct. at 1356–1357.

## II. CITY COUNCIL PROPERLY WENT INTO CLOSED SESSION.

The Open Meetings Act ("OMA") specifically permits a public body to meet in closed session (i) to consider material exempt from discussion or disclosure by state or federal statute, MCL §15.268(h), and (ii) for the purpose of consulting with an attorney regarding trial or settlement strategy in connection with specific pending litigation, MCL § 15.268(e). Both exemptions apply here.

### A. Material Exempt From Disclosure By State Or Federal Statute

#### 1. The Michigan Freedom of Information Act

The Michigan Freedom of Information Act ("FOIA") exempts from disclosure "information or records subject to the attorney-client privilege," MCL §15.243(1)(g). Therefore, Section (h) of the OMA permits a public body to meet in closed session to discuss a privileged written opinion with its lawyer. *Booth Newspapers, Inc. v. Regents of University of Michigan*, 93 Mich. App. 100; 286 N.W.2d 55 (1979); *Booth Newspapers, Inc. v. Wyoming City Council*, 168 Mich. App. 459, 467; 425 N.W.2d 695 (1988).

Michigan courts interpret the legislature's use of the term "consider" to expressly indicate that the exemption covers in-depth discussion of the legal matters and related facts by the members of the public body. *Berryman v. Madison School District*, 2007 WL 549230, *2 (Mich. Ct. App. Feb 22, 2007) (attached as Exhibit 4). Logically, Michigan courts do not limit the term "consider" to require that board members silently read the attorney's opinion letter and withhold all comment until the open meeting resumes. *Id*. Rather, all discussion that legitimately relates to legal matters is appropriately had in a closed session. *Booth Newspapers, Inc v Wyoming City Council*, 168 Mich App at 468 ("the scope of the discussion in closed session must legitimately relate to legal matters, and not bargaining, economics, or other tangential nonlegal matters"). The Court will see, upon reviewing the privileged opinions considered in the closed sessions, that these are broad in scope. The discussions in the closed sessions relate to these broad opinions and, therefore, the sessions were properly closed.

### 2. This Court's Mediation Order

This Court, which is governed by federal statute, also has the power to exempt discussions from disclosure and has done so through its Mediation Order. Pursuant to the Mediation Order, "**All** proceedings, **discussions**, negotiations and writings **incident to mediation** shall be privileged and confidential and shall not be disclosed, filed or placed in evidence." (emphasis added). Therefore, the

discussions with the Mediators, and the ensuing discussions incident thereto, as well as those relating to the legal advice provided by Mr. Hollowell or Mr. Whitaker, are properly the subject of closed session pursuant to Section (h).

### B. Material Exempt From Disclosure Due To Pending Litigation

MCL §15.268(e) permits closed sessions for the purpose of consulting with an attorney regarding trial or settlement strategy in connection with specific pending litigation where an open meeting would have a detrimental financial effect on the litigating or settlement position of the public body. The purpose of the pending litigation exemption is to allow a client to confide in his or her attorney secure in the knowledge that the communication will not be disclosed. *Kubiak v. Hurr*, 143 Mich. App. 465; 372 N.W.2d 341 (1985). For this reason, Michigan law protects public bodies from having to have these discussions in open session. There is no authority for requiring the disclosure of information protected by the exemption.[4]

---

[4] The Council Resolution authorizing the closed session cited the need to discuss opinions from City lawyers but did not specifically mention the need to consult with counsel regarding the pending bankruptcy litigation. However, the legal opinions from the City's lawyers reference the bankruptcy. Furthermore, shortly after going into the first of the closed session meetings, Judge Rosen and Eugene Driker joined the meeting to address bankruptcy issues. Their statements informed much of the ensuing discussions. Accordingly, while the Resolution did not specifically cite the pending bankruptcy litigation, the sessions were, in fact, properly closed pursuant to the litigation exception. If this Court finds that the discussions are protected by the pending litigation exemption but that Council

*Continued on next page.*

Here, Council advised the public that it was meeting in closed session specifically to discuss the transition of the Emergency Manager. The existence of the Emergency Manager, the role that Kevyn Orr, as Emergency Manager, has played in reaching agreements with the City's creditors, and the actions Kevyn Orr has taken to guide the City out of bankruptcy, are all directly related to the bankruptcy case. As such, discussions with attorneys regarding Council's ability to remove the Emergency Manager fall within the exceptions of MCL §25.268.

## III. THIS COURT'S REVIEW OF ATTORNEY-CLIENT-PRIVILEGED DOCUMENTS *IN CAMERA* IS APPROPRIATE AND WILL CONFIRM THAT THE COUNCIL MEETING WAS PROPERLY CLOSED.

Pursuant to MCLA §15.267(2), the Council recorded a separate transcript of the closed meeting. Council has not released these transcripts because they are exempt from disclosure by MCLA §15.267(2) of the OMA.[5] Plaintiff alleges – without support – that Council violated the OMA and that the proceedings held in closed session should therefore be made public.

---

*Continued from previous page.*
failed to cite Section 8(e) as a basis for closure, the appropriate remedy is to cite Council for the technical violation, not to order disclosure of information protected by statute.

[5] "A separate set of minutes shall be taken by the clerk or the designated secretary of the public body at the closed session. These minutes shall be retained by the clerk of the public body, are not available to the public, and shall only be disclosed if required by a civil action filed under section 10, 11, or 13." MCL §15.267.

Resolution of this dispute requires a review of the transcripts of the closed Council meeting. Because the City has asserted the attorney-client privilege under the two exemptions of the OMA and has also cited this Court's Mediation Order, review of the transcripts *in camera* is both necessary and appropriate. For example, in *Detroit News v. City of Detroit*, 185 Mich. App. 296, 301; 460 N.W.2d 312 (1990), the Court of Appeals specifically held that *in camera* review of closed meeting minutes is proper. The Court cited the fact that in FOIA and OMA cases, claims are filed which are "wholly conclusory and lacking in factual allegations of what actually occurred at the closed meetings. In such cases the favored remedy is *in camera* review."

In the event an *in camera* review discloses discussion not protected by an OMA exception, the appropriate remedy is to release only the non-exempt material, if any, and maintain the privilege and confidentiality of the privileged material. Thus, in *Booth Newspapers, Inc. v Wyoming City Council*, 168 Mich. App. at 473, where the Court upheld a trial court finding that the defendant council had violated OMA, the Court also reversed the district court's order that all the records pertaining to privileged discussions be made public:

> Because the OMA does not abrogate the attorney-client privilege, however, we must remand to the trial court for a determination of which records may be released and which records must remain sealed as privileged communications. *The trial court's order that the entire court file be open to public*

> *inspection was too broad. Those matters legitimately related to legal matters should not be disclosed*.

(Emphasis added).

Defendant submits that the closed-meeting transcripts are protected in their entirety for the reasons discussed above: privileged discussions relating to the written opinions of attorneys, the confidentiality provisions of this Court's Mediation Order, and privileged discussions regarding pending litigation. However, at most only those portions of the transcripts that clearly go outside the exceptions should be released. *See, e.g. Moore v. Fenville Public Schools Board of Education,* 223 Mich. App. 196; 566 N.W.2d 31 (1997).[6] Disclosure of privileged documents or deliberations is therefore not an appropriate remedy. *See also, Manning v. City of East Tawas*, 234 Mich. App. 244 (1999) (Disclosure of

[6] *Moore* was decided under Section 8 (c) of the OMA, which permits closed sessions for the purpose of strategy and negotiation connected with the negotiation of a collective bargaining agreement. Plaintiff in Moore contended that OMA did not permit the school board to actually come to any conclusions about its negotiating strategy during the closed sessions, an argument rejected by the court:

"Such a session would be pointless and absurd if the OMA were to prevent the public body from forming any conclusions about its strategic course of action. *In order to conduct a meaningful strategic session, the public body must be allowed to make determinations concerning its goals and tactics relative to the negotiations. Thus, the OMA must be interpreted so as to allow a public body to make strategic determinations during its closed-door deliberations.* To construe the provisions of M.C.L. § 15.263(3); M.S.A. § 4.1800(13)(3) and M.C.L. § 15.268(c); M.S.A. § 4.1800(18)(c) any differently would be to render them meaningless." *Id.* at 201(emphasis added).

redacted minutes of council meeting with attorneys appropriate remedy under OMA).

Therefore, this Court should review the documents submitted for *in camera* inspection: the letter requesting the opinion of counsel, the two written opinions provided by counsel, and the transcripts of the closed sessions. In the event that this Court determines that the meeting was closed for a proper purpose under the OMA and the discussions held in closed session were appropriately in furtherance of that purpose, Plaintiff's Complaint should be dismissed. If the Court determines that the meeting was closed for a proper purpose under the OMA but certain portions of the discussions were not in furtherance of that purpose, then only those portions should be disclosed.

## IV. THE BROAD INJUNCTIVE RELIEF SOUGHT BY PLAINTIFF IS NOT WARRANTED.

Even assuming that Plaintiff should be permitted to determine whether an OMA violation occurred, injunctive relief is not appropriate. Michigan law specifically acknowledges that merely because a violation of the OMA has occurred does not automatically mean a court must issue injunctive relief. *Nicholas v. Meridian Charter Township Board*, 239 Mich. App. 525, 533, 609 NW2d 574 (2000). Injunctive relief should be granted only when justice requires it, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable harm. *Wilkins v. Gagliardi*, 219 Mich. App. 260, 276, 556 N.W.2d

171 (1996). Where there is no reason to believe that a public body will deliberately fail to comply with the OMA in the future, injunctive relief is unwarranted because declaratory judgment is an adequate remedy. *Nicholas*, 239 Mich. App. at 534; *Schmiedicke v. Clare School Board*, 228 Mich. App. 259, 267, 577 N.W.2d 706 (1998).

In *Nicholas,* a town board violated the OMA by failing to provide requisite notice that it would consider public business at subcommittee meetings. The Court of Appeals held that injunctive relief was not warranted because although there was a violation of the OMA, the purpose of the statute was essentially satisfied by subsequent amended notices of the meetings and there was no evidence to believe that the public body would purposely violate the OMA in the future.

This Court should reach the same conclusion here. Council has been going in and out of closed session for matters pertaining to the bankruptcy litigation and the Emergency Manager for months, and Plaintiff has not cited any alleged violation prior to September 23, 2014. The issue prompting these closed sessions – the transition of the Emergency Manager – has now been resolved. There exists no imminent danger of future violations. The Council has made public all the resolutions setting forth the terms and conditions of the Transition Plan to transfer power from the Emergency Manager back to the Mayor and Council. The Transition Plan has been submitted to the Bankruptcy Judge and the Council has

no plan to meet in closed session to discuss this transfer again. Thus, an injunction prohibiting closed sessions regarding the future role of the Emergency Manager and "to discuss any orders, resolutions, or statutes pertaining to removing the City of Detroit from Receivership under Public Act 436" is unnecessary and inappropriate.

## CONCLUSION

For the reasons stated above, Defendant/Debtor respectfully requests that the Court grant summary judgment in favor of Debtor, deny Plaintiff's claims for declaratory and injunctive relief and dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

By: /s/ Marc N. Swanson

Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
swanson@millercanfield.com
green@millercanfield.com

Charles N. Raimi (P29746)
Deputy Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Coleman A. Young Municipal Center

Detroit, Michigan 48226
Telephone: (313) 237-5037
Facsimile: (313) 224-5505
raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

Dated: October 22, 2014

EXHIBIT 4

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

________________________________/

CITIZENS UNITED AGAINST
CORRUPT GOVERNMENT,

Plaintiff, Adv. Case No. 14-05059

v.

DETROIT CITY COUNCIL,

Defendant.

________________________________/

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 22, 2014 he filed ***DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*** using the court's CM/ECF system which will send notice of the filing to all registered participants in this matter. The undersigned further certifies that a copy of the filing was also served upon counsel as listed below, via electronic mail and First Class United States Mail:

EXHIBIT 4

Andrew A. Paterson, Jr.
Paterson Law Office
46350 Grand River Ave.
Suite C
Novi, MI 48374

Email: aap43@outlook.com

DATED: October 22, 2014

By: /s/Marc N. Swanson
Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
swansonm@millercanfield.com

EXHIBIT 6

City of Detroit Motion for Summary Judgment

Exhibit 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: CITY OF DETROIT, MICHIGAN, | . | Docket No. 13-53846 |
| | . | Detroit, Michigan |
| | . | September 29, 2014 |
| Debtor. | . | 9:06 a.m. |

. . . . . . . . . . . . . . . . .

HEARING RE. (#7667) EMERGENCY MOTION FOR RELIEF FROM STAY AND WAIVING THE FRBP 4001(a)(3) FILED BY CREDITOR CITIZENS UNITED AGAINST CORRUPT GOVERNMENT; CONTINUED TRIAL RE. OBJECTIONS TO CHAPTER 9 PLAN
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:

Jones Day
By: HEATHER LENNOX
222 East 41st Street
New York, NY 10017
(212) 326-3837

Jones Day
By: GREGORY M. SHUMAKER
GEOFFREY S. STEWART
THOMAS CULLEN
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939

Jones Day
By: DAVID G. HEIMAN
North Point, 901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-3939

Pepper Hamilton, LLP
By: ROBERT S. HERTZBERG
4000 Town Center, Suite 1800
Southfield, MI 48075-1505
(248) 359-7333

Miller, Canfield, Paddock & Stone, PLC
By: MEGAN P. NORRIS
150 West Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420

APPEARANCES (continued):

| | |
|---|---|
| For Citizens United Against Corrupt Government: | Paterson Law Office<br>By: ANDREW A. PATERSON, JR.<br>46350 Grand River Avenue, Suite C<br>Novi, MI 48374<br>(248) 568-9712 |
| For Financial Guaranty Insurance Company: | Weil, Gotshal & Manges, LLP<br>By: EDWARD SOTO<br>1395 Bricknell Avenue, Suite 1200<br>Miami, FL 33131<br>(305) 577-3177 |
| For Macomb County Drain Drainage District: | Dechert, LLP<br>By: DEBRA O'GORMAN<br>1095 Avenue of the Americas<br>New York, NY 10036<br>(212) 698-3600 |
| For AFSCME: | Miller Cohen, PLC<br>By: RICHARD MACK, JR.<br>6700 West Lafayette Blvd., 4th Floor<br>Detroit, MI 48226-3191<br>(313) 566-4787 |
| For Ad Hoc Water and Sewer Bondholders: | Kramer Levin Naftalis & Frankel, LLP<br>By: JONATHAN M. WAGNER<br>1177 Avenue of the Americas<br>New York, NY 10036<br>(212) 715-9393 |
| Court Recorder: | LaShonda Moss<br>United States Bankruptcy Court<br>211 West Fort Street, 21st Floor<br>Detroit, MI 48226-3211<br>(313) 234-0068 |
| Transcribed By: | Lois Garrett<br>1290 West Barnes Road<br>Leslie, MI 49251<br>(517) 676-5092 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

THE COURT: Let's turn our attention to the emergency motion for relief from stay, please.

MR. PATERSON: Andrew Paterson on behalf of the petitioners.

MS. NORRIS: Megan Norris of Miller Canfield --

THE COURT: All right. Stand by one second while those who would like to leave the courtroom get an opportunity to do that.

MR. THORNBLADH: Thank you, your Honor.

MS. JENNINGS: Thank you, your Honor.

THE COURT: You're welcome. Let's give folks one more minute. And I think we are ready to proceed, sir.

MR. PATERSON: Your Honor, this is petitioner's -- movant's motion for relief from the stay for purposes of filing in the Wayne County Circuit Court an open meetings case against the Detroit City Council. And I would first indicate that the ideal of a democratic government is too often thwarted by bureaucratic secrecy and unresponsive officials. Citizens frequently find it difficult to discover what decisions are being made and what facts lie behind those decisions. The Open Meetings Act protects citizens' right to know what's going on in government by opening to full public view the process by which elected and nonelected officials make decisions on citizens' behalf. Those are not my words. Those are the words of the Michigan legislature upon the

introduction of the Open Meetings Act and the Freedom of Information Act in 1976 in the post-Watergate era. The Section 3 of the Open Meetings Act states in its very first sentence, "All meetings of a public body shall be open," and the law as it is developed construes exemptions from that narrowly and broadly protects the right of citizens to know what's going on in their government.

The response from the debtor on behalf of the city council indicated, and I think correctly, that the violation of the Open Meetings Act is not really the issue before this Court, and I think that's correct, although the bulk of the response did try to repeat over and over and over again that it was a permitted meeting under various exemptions, particularly the legal matters. The evidence that the movants intend to introduce would be the extensive public statements about the meetings from the participants in the meetings indicating that there were negotiations and discussions for three full days. I think it was a patent violation of the Open Meetings Act, and the plaintiffs intend to seek as well as a declaration of that an injunction against further violations by the Detroit City Council with respect to the Open Meetings Act.

THE COURT: Well, how do you deal with the city's argument that your claim is moot?

MR. PATERSON: It's not. I mean they've

indicated --

THE COURT: How do you deal with it? What's your response?

MR. PATERSON: They've indicated repeatedly that these were meetings and discussions addressing the facts behind the decisions, and those are clearly covered by the Open Meetings Act. The city's response or the debtor's response is the response that it may want to make to a circuit judge, but for purposes of this Court's relief, the merits of the case aren't really before it, although I'm confident this is a lay-down open meetings violation. The city has failed in its response to point to any specific harm that would happen to this proceeding or in this court. They've made --

THE COURT: Well, but I need an answer to my question because if the matter is moot, there's no sense in granting relief from the stay.

MR. PATERSON: I'm seeking an injunction.

THE COURT: What's not moot about it?

MR. PATERSON: I'm seeking --

THE COURT: What relief can a court provide to your clients?

MR. PATERSON: The Circuit Court can and probably will enjoin them from further violations of the Open Meetings Act. Citizen's right to know. It's a fundamental right of

every citizen of this state to see that public bodies --

THE COURT: But there's no more --

MR. PATERSON: I did in our motion --

THE COURT: Let me just -- let me just finish my question.

MR. PATERSON: Yeah. Go ahead.

THE COURT: There's no more imminent or threatened violation of the Open Meeting Act at this point.

MR. PATERSON: The circuit judge may determine that and may not issue an injunction, but I am going to seek an injunction against further violations. I must say I have in the past sued the city's city council for past violations. This is not a new thing to disregard the public's right to know. I don't understand it as a philosophy of governance. I would think that you would want to educate your constituents as to all of the issues behind all of your decisions so that they better understand it and don't suspect that there's some secret deal, I think particularly in this case. There's not been any decision made by this city council other than the initial one back 18 months ago that's been more important. The citizens are wondering.

THE COURT: What happened 18 months ago?

MR. PATERSON: Mr. Orr was accepted and appointed to the emergency manager position under Act 43 --

THE COURT: Did the city council do that?

MR. PATERSON: City council did not oppose it. I think it was a five to four vote, as I recall, or four -- it was a one vote majority. That's that last decision that the council made that had the importance to this decision, and I don't think that there's any particular dispute with the merits of the decision. It's probably a good thing. I don't think that's the issue. I think the way they have gone about it in hiding it from their constituents is the issue. That doesn't serve the public interest well. It doesn't --

THE COURT: Does the law require a public body to open up its meetings when it's seeking legal advice from its attorneys?

MR. PATERSON: I think it's pretextual that they said that. How do you negotiate --

THE COURT: Please answer my question.

MR. PATERSON: Oh, the law permits certain matters that are legal matters that are involved in litigation but also in the public body's obligations under contract or the law to be discussed, and they do allow them to be discussed in private.

THE COURT: And so why -- where is the evidence that something other than that happened here?

MR. PATERSON: The evidence is in the public statements of the participants in the meeting.

THE COURT: Like what?

MR. PATERSON: Pardon?

THE COURT: Like what? Name one.

MR. PATERSON: Three days of negotiations. Even in their own brief, they talked about reaching a consensus. All of the facts that underlie the decision that was made and the agreements that were reached have been excluded from the public view.

THE COURT: Now, you said there were public statements that suggest that something at these meetings happened other than council deliberating with its attorneys on legal matters.

MR. PATERSON: I do say that. I do say that, and I think the defendants --

THE COURT: I'd ask you to identify one.

MR. PATERSON: The defendants indicate that in their response. They indicate that the closed sessions were conducted for the purposes of obtaining legal advice. They've said that repeatedly, repeatedly, repeatedly, but they also indicate --

THE COURT: The fact that they state it repeatedly doesn't make it wrong.

MR. PATERSON: No, but if I call a dog's tail a leg, he still only has four legs, as Lincoln observed.

THE COURT: Okay.

MR. PATERSON: The statement in the defendant's

response indicates that they reached a consensus and that the consensus was reflected in the agreements that were signed and authorized by the city council. Those agreements --

THE COURT: Well, but they were -- it was a -- it was a consensus concerning this litigation.

MR. PATERSON: It's a consensus as to how to proceed with respect to the future --

THE COURT: This litigation.

MR. PATERSON: I don't see that as an exemption under the Open Meetings Act.

THE COURT: Well, but --

MR. PATERSON: All public meetings -- all meetings --

THE COURT: I thought you had already admitted that there was an exemption for legal advice relating to litigation.

MR. PATERSON: Yes, and I think the public statements by the participants in the meeting indicate that was pretextual, very simply pretextual.

THE COURT: Okay. But I'm asking you --

MR. PATERSON: In fact, you don't need to see the smirk of the mayor when he was asked that question to know that it was pretextual. Other members that attended the meeting saw that they had a lot of negotiations to do over the timing and all of those issues that were involved that

are substantive.

THE COURT: But I'm asking you why isn't all of that covered by the exemption?

MR. PATERSON: It's not. It's not legal matters.

THE COURT: But to tell me it's not doesn't answer my question. Why isn't it? What's the --

MR. PATERSON: Participating --

THE COURT: What's the legal analysis that establishes that it's not?

MR. PATERSON: Participating in a negotiation with parties is not legal analysis. That's not discerning legal analysis. That's my right to participate in a negotiation, and the city council is told that in their legal opinion, and then they proceed to negotiate. Those are public discussions.

THE COURT: But it's negotiation over a legal matter in litigation.

MR. PATERSON: It does not exempt the facts that underlie the decision and the consensus and the discussions that were reached with respect to this. Not all legal --

THE COURT: What's the best case you've got in support of your position?

MR. PATERSON: I think I cited them in my brief, and they do address the scope of the legal exemption. It's certainly in the context of litigation it can arise. It is

also, though, important to know what were the bases reached for some compromise within those litigations or the facts underlying -- the discussion of the facts underlying and the truth of those facts. The substance of that decision is the kind of decision that a Circuit Court would make.

THE COURT: Well, let me propose -- let me propose to you a hypothetical. Counsel for the city wants to give -- all right. The term "counsel" obviously has two distinct meaning here. The attorney for the city wants to give the council -- the city council legal advice on how to settle a personal injury suit and explain why he's recommending a settlement at X dollars. Okay. They go into closed session because it's in litigation, and one of the members says, "I don't want to -- I don't think we should settle this for X. I think we should settle it for Y," and they continue to have a discussion with the attorney about the legal merits of the case, the strengths and weaknesses on each side, and they come to a resolution to offer a settlement at Z. How much, if any, of that needs to be in public under the Open Meetings Act?

MR. PATERSON: The legal obligations or the recommendation of the attorney if it's in writing is certainly something that can be discussed. Why did you reach that number, why do you propose settling it, and here's what I propose settling it for because of and gives them the

merits, objections to it, discussion of it, starts to borderline whether or not that is exempt. That's the circuit judge's obligation to determine in the proceeding, and the minutes --

THE COURT: So your position is that even the attorney's statement of reasons why the case should not be settled at Y, it should be settled at X, is something that might be subject to the Open Meetings Act?

MR. PATERSON: Might be; might be. Not likely, but might be. More than often -- more often than not there will be a consensus reached, but the discussions here travel beyond the settlement of a lawsuit. This is the active participation of the city in its future of the most fundamental aspects of it and the regaining of the power to do that. That was what was on the table according to Mr. Orr and his orders that were entered in respect to that. Those are matters that reach well beyond the legal obligations of the city and involve widespread negotiation over the regaining of the power of the elected members of the city council.

THE COURT: Well, but all in relation to the administration of this bankruptcy from the city's perspective.

MR. PATERSON: The city is also obligated and the emergency manager is also obligated to administer the city

and administer under the law all of the obligations of the city and the business of the city. They can't blanket the business of the city with a, well, it's in Bankruptcy Court; therefore, the stay is a shield against violations of the Open Meetings Act and other violations of law.

THE COURT: Anything further, sir?

MR. PATERSON: No, other than I did in my motion indicate to the Court that I'm not seeking to undo, as I'd have the right to do under the Open Meetings Act, the actions taken. The relief that we're seeking in the Circuit Court would be prospective only, and it would be prospective with respect to further violations of the Open Meetings Act by the Detroit City Council.

THE COURT: And of course you'd want attorney fees.

MR. PATERSON: And of course I would want attorney's fees.

THE COURT: Thank you.

MR. PATERSON: Thank you.

MS. NORRIS: Good morning, your Honor. Megan Norris on behalf of the city. I'll be brief. It's clear that you've reviewed everything. First of all, the timing of the motion and the substance of plaintiff's motion makes it clear that the events at issue are over. Plaintiffs filed their motion mid-day on Thursday. By the end of the day Thursday, the city and state had filed with this Court a joint notice

of transition plan, which outlines a proposed transition from the emergency manager to the city elected officials. Plaintiff in their motion does not -- petitioners don't argue that there have been any other violations of the Closed Meetings Act by city council. City council has been in and out of closed session for a number of reasons on a number of occasions since this bankruptcy trial began. The only issue are the meetings that have just taken place. One of the Garzoni factors is the creditor's claim -- whether the creditor's claim is likely to succeed on the merits, and as the Court has noted, there is no evidence of any violation. The meeting was properly closed. The statute was cited. The transition -- the subject being the transition, specifically PA 436 transition matters, was cited in city council's closure resolution. This was not a blanket business of the city closure. This was not even a blanket attorney-client privilege closure. This was specifically to discuss the memoranda of counsel and the advice of counsel and discussion of the memoranda relating to the transition. Clearly there can be harm to the city if this is allowed to go forward at this time, and that really is the question. It's not whether it can go forward. It's whether it can go forward at this time, whether the stay should be lifted. As this Court has noted repeatedly in the trial in front of it as we speak, the issue on the plan of adjustment is not simply whether debts

can be resolved. The issue is also whether the city has a viable plan to go forward, and a big part of that plan is how the city moves from the emergency manager that has effectively guided the city through this bankruptcy back to the elected officials as the city goes forward to allow a lawsuit against exactly those players, city council, but obviously the mayor would be involved. Obviously the emergency manager would be involved. To allow a lawsuit involving those folks to go forward at this time would be detrimental to exactly what this Court is trying to accomplish in smoothing the transition of the city out of bankruptcy. If you have any questions, I'm happy to answer them.

THE COURT: What's the connection given that Mr. Paterson says all he wants is an injunction against future violations of the Open Meetings Act?

MS. NORRIS: Right. So the connection is it's a law -- first, he has to prove a violation, so there's a lawsuit, and in that lawsuit there will be arguments about what happened or didn't happen. That will require at minimum an in camera review of what happened in closed session. In many cases Mr. Paterson has sought to take depositions of people involved to determine whether the mayor's smirk -- I use Mr. Paterson's term -- means anything, to determine whether, as in the Wyoming case, there were winks or nods or

slips of paper across the table, so there's discovery in that case. So before there's any finding of a violation, before any injunction is issued, before any attorney's fees are awarded, there has to be a finding, and that is exactly the kind of action that the city does not need to be going through right now. It is a very sensitive area. The orders have been issued. You've seen the transition, the joint notice of transition. As Mr. Paterson noted, there was a city council meeting at the beginning not to oppose the appointment of Kevyn Orr, and there has been a meeting at the end. The parties have agreed that there is a date certain -- i.e., the effective date of the plan of adjustment -- and Mr. Orr has begun the transition, so there's no evidence that there would be meetings on this topic going forward. If there were, they would be noticed in the same way, but to say that the notice was pretextual in some way when the results of the meeting are exactly the topic identified in the legal memoranda, it's not like the results of the meeting are something unrelated to exactly what was identified. The transition plan is absolutely without any support.

THE COURT: Thank you.

MS. NORRIS: Thank you.

MR. PATERSON: If the Court is concerned, I'm fairly satisfied that there's ample evidence that won't require the deposition of the mayor or the emergency manager in this

case. Statements made by city council members and others are public and ample, and I, frankly, expect that they will have to admit those statements once the proceeding has begun.

THE COURT: The city questions why this can't wait, if it needs to be pursued at all, until after the bankruptcy is over.

MR. PATERSON: The injunction relief would prevent further violations of the Open Meetings Act and allow the citizens to see what decisions are being made in public and what the facts are that lie behind those decisions.

THE COURT: Well, fair enough, but you don't have any evidence of any imminent or threatened violation of the Open Meetings Act other than, well, they did it once, so they might do it again.

MR. PATERSON: I think that question flips the burden. I think the proceeding, if the stay were lifted, is not going to affect this Court's actions or anything in this Court whatsoever. It's going to carry on independent of that, and there's absolutely no burden on this Court by removing and lifting the stay with respect to this litigation, and, in fact, I think that --

THE COURT: Well, the argument isn't based on burden on this Court. The argument is based on burden to the city in having to address your lawsuit while it's trying to wrap up this --

MR. PATERSON: The city --

THE COURT: -- critical litigation here.

MR. PATERSON: The city law department has had little to do during this proceeding because many of the cases that were stayed did not proceed. I know for --

THE COURT: You're concerned about full employment for the city law department?

MR. PATERSON: I think they're more than able and capable of defending this action.

THE COURT: Well, but it's not just the law department. It's the city.

MR. PATERSON: I don't see how potentially, I guess, a deposition -- if there's a failure to admit public statements that were made and a request for that admission is denied, I suppose at that point I need to take the deposition of the person that made the statement, and in most cases it's members of the city council that were explaining their vote and why they carried out for three days the discussions on this matter. That doesn't seem to impose any burden on this Court.

THE COURT: All right. Thank you. Anything further?

MR. PATERSON: Thank you.

MS. NORRIS: No, your Honor.

THE COURT: All right. I'll take this under

advisement for 15 minutes, and we'll reconvene at 9:45, please.

THE CLERK: All rise. Court is in recess.

(Recess at 9:30 a.m., until 9:50 a.m.)

THE CLERK: All rise. Court is back in session. You may be seated.

THE COURT: It appears everyone is present. The standard by which the Court determines this and other motions for relief from the stay is whether the moving party has established cause. The matter is, of course, addressed to the Court's discretion. In evaluating whether there is cause for relief from the stay, the Court considers the harm to the moving party if the stay is maintained and the harm to the debtor if this motion is granted and relief from stay is granted. In this case, if relief from the stay is denied and the stay is maintained in effect, the plaintiffs will be forced to wait to pursue their claim against the city until the stay terminates, which would happen either upon confirmation or dismissal of the case. If the motion is granted, the city will be, of course, required to defend the lawsuit that would be filed.

The city maintains that the lawsuit is moot and that it otherwise lacks merit under the Open Meetings Act and that it should not be forced to defend a lawsuit that is either moot or lacks merit or both. There are certainly aspects of

City of Detroit Motion for Summary Judgment

EXHIBIT 2

# DETROIT CITY COUNCIL

## FORMAL SESSION

## TUESDAY, SEPTEMBER 23, 2014

## 10:00 A.M.

## NEW BUSINESS

**MAYOR'S OFFICE**

1. **Leland,** reso. autho. To transfer City-owned Vacant Residential Land to the Detroit Land Bank Authority. ***(PULLED FROM THE FORMAL SESSION ON 9-16-14)***

**FINANCE DEPARTMENT/PURCHASING DIVISION**

2. **Benson,** reso. autho. **Contract No. 2891323 -** 23.47% Street Fund, 17.79% State, 49.38% Federal, 9.36% Other Funding – To Provide Construction Engineering and Inspection Services (CE&I) for Fourteen (14) MDOT Projects – Contractor: Parsons Brinckerhoff Michigan, Inc., Location: 500 Griswold St., Suite 2900, Detroit, MI 48226-5001 – Contract Period: Upon Receipt of Written Notice to Proceed through December 31, 2018 – Contract Amount: $2,158,222.34. **PUBLIC WORKS (REPORTED OUT OF THE PUBLIC HEALTH AND SAFETY STANDING COMMITTEE ON 9-22-14)**

**POLICE DEPARTMENT**

3. **Benson,** reso. autho. Petition of Midtown Detroit, Inc. (#385), request to hold "D'Lectricity" in Midtown along Woodward on September 26-27, 2014 from dusk to midnight. **(AWAITING REPORTS FROM MAYOR'S OFFICE; BUILDINGS SAFETY ENGINEERING, FIRE, DPW-CITY ENGINEERING; BUSINESS LICENSE CENTER) (REPORTED OUT OF THE PUBLIC HEALTH AND SAFETY STANDING COMMITTEE ON 9-22-14)**

**RECREATION DEPARTMENT**

4. **Sheffield,** reso. autho. To extend grant agreement with the State of Michigan Department of Natural Resources-Trust Fund Grant for improvements at Lipke Playfield. **(An extension will allow the Recreation Department to properly complete the repairs and improvements to Lipke Playfield as stated in the original agreement.) (REPORTED OUT OF THE NEIGHBORHOOD AND COMMUNITY SERVICES STANDING COMMITTEE ON 9-18-14)**

5. **Sheffield,** reso. autho. To extend grant agreement with the State of Michigan Department of Natural Resources-Trust Fund Grant for improvements at Patton Park. **(An extension will allow the Recreation Department to properly complete the repairs and improvements to Patton Park as stated in the original agreement.) (REPORTED OUT OF THE NEIGHBORHOOD AND COMMUNITY SERVICES STANDING COMMITTEE ON 9-18-14)**

**RESOLUTIONS**

6. **Benson,** reso. autho. Waiving the attorney client privilege on the Legislative Policy Division Memorandum dated September 15, 2014, entitled *Regional Great Lakes Water Authority (GLWA).*

7. **Cushingberry, Jr.,** reso. autho. Waiving its attorney client privilege on the Legislative Policy Division's memorandum dated September 16, 2014, entitled *Proposed Bankruptcy Settlement with Syncora Guarantee, Inc.,* **only** for the purpose of providing the document to the Law Firm of Jones Day for its consideration in regard to *In Re City of Detroit, Michigan,* United States Bankruptcy Court Case No. 13-53846.

8. **Sheffield,** reso. autho. That the meeting of the Detroit City Council Neighborhood and Community Services Standing Committee, scheduled for ***Thursday, September 25, 2014 at 1:00 p.m.*** is cancelled because a quorum of the committee will not be present.

9. **Spivey,** reso. autho. scheduling a Closed Session for ***Tuesday, September 23, 2014 at 2:00 p.m.,*** for the purpose of consulting with attorneys from the Law Department, the City Council Legislative Policy Division and any other indispensable parties to discuss privileged and confidential communications and legal memoranda from the Law Department dated September 22, 2014, entitled "P.A. 436 *Transition Matters".* **ROLL CALL**

10. **Tate,** reso. autho. Waiving the attorney client privilege on the Law Department's memorandum dated September 19, 2014, entitled – *Opinions requested by Council on the Great Lakes Water Authority.*

11. **Tate,** reso. autho. Waiving the attorney client privilege on the Law Department's Memorandum dated September 19, 2014, entitled – *Whether Kevyn D. Orr – Emergency Manager for the City of Detroit ("Emergency Manager")has the authority to act on behalf of the Detroit City Council ("City Council") and approve the Memorandum of Understanding for the Formation of the Great Lakes Water Authority should City Council vote to disapprove this action and whether members of City Council would be in violation of the Detroit City Code should they vote to approve this transaction.*

## PRESIDENT'S REPORT ON STANDING COMMITTEE REFERRALS AND OTHER MATTERS:

## PLANNING AND ECONOMIC DEVELOPMENT STANDING COMMITTEE

***THE FOLLOWING ITEM(S) ARE TO BE REFERRED TO THE PLANNING AND ECONOMIC DEVELOPMENT STANDING COMMITTEE:***

**LAW DEPARTMENT**

12. Submitting report and Proposed Ordinance to amend Chapter 14 of the 1984 Detroit City Code, *Community Development,* Article IX. *Community Advisory Councils,* Division 1. *In General; Creation and Dissolution of Community Advisory Councils,* by amending Section 14-9-8(g) by creating the Community Advisory Council for District 7 in accordance with Section 9-102 of the 2012 Detroit City Charter. **[FOR INTRODUCTION OF AN ORDINANCE AND SETTING OF A PUBLIC HEARING]**

**HISTORIC DESIGNATION ADVISORY BOARD**

13. Submitting reso. autho. the Historic Designation Advisory Board, a study committee, to conduct studies to determine whether the historic Redford Branch-Detroit Public Library located at 21511 W. McNichols meets the criteria for historic designation and to issue appropriate reports in accordance with the Michigan Local Historical District Act and Chapter 25, Article II of the 1984 Detroit City Code. **(Petition #414)**

14. Submitting reso. autho. Appointment of *ad hoc* members of the Historic Designation Advisory Board in connection with the study for the proposed Redford Branch-Detroit Public Library, as a historic district. **(Petition #414)**

**PLANNING AND DEVELOMENT DEPARTMENT**

15. Submitting reso. autho. Request for ***Public Hearing*** for Live @ St. Regis, LLC.; Application for an Obsolete Property Rehabilitation Certificate, in the area of 3075 W. Grand Blvd., Detroit, MI, in accordance with Public Act 146 of 2000. **(Petition #2664)**

16. Submitting reso. autho. Request for ***Public Hearing*** for 711 W. Alexandrine, LLC; Application for an Obsolete Property Rehabilitation Certificate, in the area of 711 W. Alexandrine, Detroit, MI, in accordance with Public Act 146 of 2000. **(Petition #294)**

17. Submitting reso. autho. Request for ***Public Hearing*** for 751 Griswold, LLC; Application for an Obsolete Property Rehabilitation Certificate, in the area of 751 Griswold, Detroit, MI, in accordance with Public Act 146 of 2000. **(Petition #118)**

18. Submitting reso. autho. Request for ***Public Hearing*** for 6402 Woodward, LLC.; Application to Establish an Obsolete Property Rehabilitation District, in the area of 6402 Woodward Avenue, Detroit, MI, in accordance with Public Act 146 of 2000. **(Petition #350)**

## PUBLIC HEALTH AND SAFETY STANDING COMMITTEE

***THE FOLLOWING ITEM(S) ARE TO BE REFERRED TO THE PUBLIC HEALTH AND SAFETY STANDING COMMITTEE:***

**LAW DEPARTMENT**

19. Submitting report and Proposed Emergency Ordinance to amend Chapter 19, *Fire Prevention and Protection,* Article I, *Detroit Fire Prevention and Protection Code,* Division 2, *National Fire Protection Association Fire Prevention Code and Amendment Thereof,* Section 9-1-22, *Amendments and Changes,* Chapter 28, *Refueling,* Section 28-2-8, *Operational Requirements,* by adding Sections 28-2.8.2.3, 28-2.8.2.3.1, 28-2.8.2.3.2, 28-2.8.2.3.3, and 28-2.8.3.4 to prohibit the dispensing of fuel into portable containers within the City of Detroit from Monday, October 27, 2014, at 12:00 a.m., through Friday, October 31, 2014, at 11:59 p.m., except for certain emergency situations for persons who are eighteen (18) years of age or older, and to provide that any person who violates Section 28-2.8.2.3.2, *Prohibitions,* shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished, for each such offense, by a fine not exceeding five hundred dollars ($500.00), or by imprisonment for a period not exceeding ninety (90) days, or by both in the discretion of the court.

20. Submitting report and Proposed Emergency Ordinance to amend Chapter 33, *Minors,* Article III, *Regulation of Minors in Public Places and Adult Responsibility for Violations,* Division 2, *Curfew*, of the 1984 Detroit City Code by adding Sections 33-3-14 and 33-3-15 to provide for a superseding curfew in the City of Detroit for all minors on Wednesday, October 29, 2014, from 6:00 p.m. through 11:59 p.m., Thursday, October 30, 2014, from 12:00 a.m. through 6:00 a.m. and from 6:00 p.m. through 11:59 p.m., and on Friday, October 31, 2014, from 12:00 a.m. through 6:00 a.m., and for limited exceptions for any minor: 1) accompanied by his or her parent or legal guardian; 2) traveling to and from his or her place of employment; or 3) traveling to and from an education or training program during the specified periods.

**AIRPORT DEPARTMENT**

21. Submitting reso. autho. To accept and execute grant contract with the Michigan Department of Transportation Federal Project No. D-26-0027-3912; State Contract No. 2014-0960; FM 82-02-MP. **(This contract provides funding for Airport Layout Plan Phase 1 (Runway Safety Area Study, User Survey, and Modification to Standards Evaluation) – Planning.)**

## TESTIMONIAL RESOLUTIONS AND SPECIAL PRIVILEGE

22. **Jones**, Resolution in Memoriam for Ivory Lee Tilmon.

City of Detroit Motion for Summary Judgment

EXHIBIT 3

**BY COUNCIL MEMBER** Spivey

**RESOLVED,** in keeping with the requirements of the Open Meetings Act, MCL 15.268, Section 8(h), a closed session of the Detroit City Council is hereby called for September 23, 2014, at 2:00 p.m., for the purpose of consulting with attorneys from the Law Department, the City Council Legislative Policy Division and any other indispensable parties to discuss privileged and confidential communications and legal memoranda from the Law Department dated September 22, 2014, entitled "*P.A. 436 Transition Matters*".

LPD: September 22, 2014

## ADOPTED AS FOLLOWS
## COUNCIL MEMBERS

| | YEAS | NAYS |
|---|---|---|
| ~~Scott BENSON~~ | | |
| Raquel CASTANEDA-LOPEZ | ✓ | |
| *George CUSHINGBERRY, JR. | ✓ | |
| Saunteel JENKINS | ✓ | |
| Gabe LELAND | ✓ | |
| Mary SHEFFIELD | ✓ | |
| Andre L. SPIVEY | ✓ | |
| James TATE | ✓ | |
| Brenda PRESIDENT JONES | ✓ | |
| *PRESIDENT PRO TEM | | |
| | 8 | 0 |

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Appeals of Michigan.
James BERRYMAN and Connie Hayes, Plaintiffs-Appellants,
v.
MADISON SCHOOL DISTRICT, Madison School District Board Of Education, Walter Hill, Deborah Griffith, Julie Ramos, M. Kyle Ehinger, Dawn Bales, David Halsey, and Mark Swinehart, Defendants-Appellees.

Docket No. 265996.
Feb. 22, 2007.

Lenawee Circuit Court; LC No. 05-001803-CZ.

Before: O'CONNELL, P.J., and SAAD and TALBOT, JJ.

PER CURIAM.

***1** Plaintiffs appeal as of right the trial court's order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

This case arose when plaintiff Hayes, a teacher for defendant Madison School District, told her superintendent that she was going to adopt a child from Guatemala and intended to take leave under the Family Medical Leave Act (FMLA), 29 USC 2601 *et seq.* She also suggested that she would take the leave as a paid absence, because she had accumulated paid leave time under the collective bargaining agreement. The administration decided that Hayes should only receive unpaid leave, so she filed a grievance that eventually worked its way before defendant school board. Plaintiff Berryman was the union representative who represented plaintiff Hayes throughout the grievance process, and the remaining defendants are the individual members of the school board.

Before addressing Hayes' in an open meeting, the members of the board held a closed meeting. They assert that the only purpose of the closed meeting was to review a letter drafted by the district's legal counsel and make sure that the board members did not have any revisions that they thought were necessary. However, plaintiffs allege that the board members were visibly and actively engaged in conversation in the closed, but windowed, room. Plaintiffs further assert that another district employee was handed documents to photocopy before the issue was put to a vote, but the originals already had the signature of the board's secretary on them. When the board reopened the meeting, defendant Swinehart immediately began editorializing about the anticipated course of the proceedings, indicating that the board was denying the grievance. After prompting by the superintendent, Swinehart restated his position as a motion, and the motion passed. Plaintiffs then filed this suit, alleging that the action was invalid because the board's closed meeting violated the Open Meetings Act (OMA), MCL 15.261 *et seq.* Our review of this case is limited solely to the OMA issues, and does not address the validity of defendants' decision to deny Hayes' grievance.

Plaintiffs first contend that the trial court erred by granting summary disposition to defendants. We disagree. We review de novo a trial court's decision to grant summary disposition. *Maiden v. Rozwood,* 461 Mich. 109, 118; 597 NW2d 817 (1999).

Pursuant to MCL 15.263 of the OMA, a public

body, such as a school board, must meet publicly and its members must conduct their deliberations and reach their decisions in the public meetings. However, the requirement of open deliberations does not apply to a closed meeting conducted "to consider material exempt from discussion or disclosure by state or federal statute." MCL 15.268(h). Therefore, the school board members did not run afoul of the OMA if they closed the meeting "for consideration of a written legal opinion within the attorney-client privilege." *Booth Newspapers, Inc v. Wyoming City Council,* 168 Mich.App 459, 467; 425 NW2d 695 (1988). Additionally, the Michigan Freedom of Information Act provides that a public body may exempt from disclosure any "[i]nformation or records subject to the attorney-client privilege." MCL 15.243(1)(g).

***2** The term "consider" in MCL 15.268(h) is not so limited that it required each board member to silently read the attorney's opinion letter and withhold all comment until the open meeting resumed. Instead, the statute allows the public body, or entity, to "consider" the legal opinion, indicating that the Legislature intended discussion and deliberation among the individual parts of the whole entity. MCL 15.268. In fact, "deliberating" is a defining component of a "meeting" convened under the OMA, whether open or closed. MCL 15.262(b); see also *Moore v. Fennville Public Schools Board of Education,* 223 Mich.App 196, 202; 566 NW2d 31 (1997). Plaintiffs argue that the duration of the closed session-27 minutes-is substantial and suggests that the board did more than merely review the written materials of its legal counsel. They also point to plaintiff Berryman's allegation that he could see the board members carrying on a conversation. However, the board members were not prohibited from discussing the legal documents, and 27 minutes does not seem unreasonably long for the board members to read and discuss the 11-page draft disposition and accompanying attorney letter. Under the circumstances, neither the length of the board meeting nor the board's deliberations raise an inference that board members used the meeting to deliberate specifically about denying Hayes' grievance without reference to the legal opinion. According to the affidavits of all eight of the board members present at the closed session, "any discussion or deliberation in closed session was consistent with [MCL 15.263(3) ], was brief, and was limited to legal counsel's letter and draft grievance disposition." Therefore, plaintiffs failed to substantiate their allegations that the school board's deliberations ran afoul of the OMA.

Regarding plaintiffs' assertion that a decision had already been made in closed session, contrary to MCL 15.263(2), the OMA defines a decision as a "determination, action, vote or disposition upon a motion ... on which a vote by members of a public body is required and by which a public body effectuates or formulates public policy." MCL 15.262(d). Plaintiffs argue that the lack of deliberation by the board members after they returned to open session implies that the deliberation and decision actually occurred during the closed session. They argue that the decision in this case, like the decision in *Booth Newspapers, Inc v. Univ of Michigan Bd of Regents,* 444 Mich. 211, 229; 507 NW2d 422 (1993), was a fait accompli before the open meeting began. We disagree. Given the contents of the legal opinion and the legal advice considered in the closed meeting, it is not surprising that the members' general agreement with the opinion would translate into the action they eventually took. Nevertheless, this natural understanding and common perception among the board members does not amount to a "decision" under the act. See *Moore, supra* at 203.

***3** Here, the board members' affidavits confirm that no decision was made regarding Hayes' grievance, no vote was taken, and no board member indicated in closed session how he or she would officially vote on the grievance in open session. Defendants submitted the minutes of the closed session to the lower court for in camera review, as well as affidavits from all board members confirming that the discussion in the closed session was limited to legal coun-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

sel's written material, with no discussion of how each member would vote. Under the circumstances, the lack of deliberation in the open meeting does not suggest that the board secretly and definitively decided the matter. To hold otherwise would leave every closed meeting open to judicial intervention and disclosure as long as the public body's preferred course after the meeting was so obvious that further discourse was unnecessary and the final decision was unanimous. Because plaintiffs fail to proffer any evidence of abuse or circumvention of the OMA, this case does not remotely rise to the level of back-room decision-making that was condemned in *Booth Newspapers, Inc v. Univ of Michigan Bd of Regents, supra.*

Plaintiffs' next argue that the trial court erred in denying plaintiffs' motion to compel on the basis that the material sought was protected by the attorney-client and attorney work-product privileges. We disagree. Whether the attorney-client privilege applies to a communication is a question of law that this Court reviews de novo. *Leibel v. General Motors Corp,* 250 Mich.App 229, 236; 646 NW2d 179 (2002). Similarly, whether the work product privilege applies is a question of law that we review de novo. *Koster v. June's Trucking Inc,* 244 Mich.App 162, 168; 625 NW2d 82 (2000). A trial court's decision to grant or deny a discovery request is reviewed for an abuse of discretion. *Chastain v. General Motors Corp (On Remand),* 254 Mich.App 576, 593; 657 NW2d 804 (2002). “Opinions, conclusions, and recommendations based on facts are protected by the attorney-client privilege when the facts are confidentially disclosed to an attorney for the purpose of legal advice.” *Leibel, supra* at 239. “The purpose of the attorney-client privilege is to permit a client to confide in the client's counselor, knowing that the communications are safe from disclosure.” *Co-Jo, Inc v. Strand,* 226 Mich.App 108, 112; 572 NW2d 251 (1997).

In this case, the documents sought by plaintiffs consist of (1) a draft of Hayes' grievance disposition, which contained facts disclosed by district officials, the attorney's legal analysis, and his legal opinions; (2) another draft of Hayes' grievance disposition with minor revisions on district letterhead; and (3) a letter from legal counsel to defendants providing his recommendations concerning the draft. The two versions of the draft disposition contained essentially the same language except for a few minor revisions. The documents sought after in the instant case are protected by both the attorney-client privilege and the work-product doctrine. The drafts of Hayes' grievance disposition, as well as the accompanying letter, contained confidential facts disclosed to the attorney for the purpose of securing the attorney's legal advice concerning how to proceed with Hayes' grievance. The attorney's advice was sought to ensure that the board's decision comported with the collective bargaining agreement and the FMLA, both of which allow paid leave in limited circumstances.

***4** Plaintiffs acknowledge that the documents contain some information that is normally privileged, but argue that the purpose of the documents means that defendants waived their privilege to withhold them. Only a client can waive the attorney-client privilege and a waiver does not arise by accident. *Leibel, supra* at 240. A true waiver must be intentional and voluntary. *Leibel, supra* at 241. “Absent a true waiver ... a document retains its privileged status, regardless of whether it has been publicly disclosed.” *Id.* Contrary to plaintiffs' assertions, the privilege is not waived merely because a final version of the drafts would eventually be made available to Hayes and her union. There is no indication that waiving the privilege to the final document waives the privilege to its rough drafts. Absent an affirmative indication that defendants intended to waive the privilege, the requested documents are not subject to discovery. *Id.*

Moreover, the work product doctrine protects from discovery the notes, working documents, and memoranda that an attorney prepares in anticipation of litigation. *Id.* at 244. “[A] document may be prepared in anticipation of litigation if the attorney rendered

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

legal advice in order to protect the client from future litigation concerning a particular transaction or issue." *Id.* at 246. Here, legal counsel composed the two draft dispositions in an effort to avoid binding arbitration. Similarly, the attorney letter accompanying the drafts contained legal opinions and was prepared in an effort to avoid further litigation. Arbitration proceedings were imminent at the time the documents were drafted. The attorney who drafted the documents represented the district in arbitration. The documents contained mental impressions, conclusions, opinions, and legal theories concerning the arbitration, and plaintiffs never demonstrated a pressing need and a lack of alternative sources for any facts contained in the documents. Accordingly, the trial court did not err when it determined that the documents were protected as the attorney's work product.

Affirmed.

Mich.App.,2007.
Berryman v. Madison School Dist.
Not Reported in N.W.2d, 2007 WL 549230 (Mich.App.)

END OF DOCUMENT

23114467.1\022765-00202

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.