**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |
| CITIZENS UNITED AGAINST CORRUPT GOVERNMENT, | |
| Plaintiff, | Adv. Case No. 14-05059 |
| v. | |
| DETROIT CITY COUNCIL, | |
| Defendant. | |

**THE CITY OF DETROIT'S RESPONSE TO PETITIONERS ROBERT DAVIS' AND CITIZENS UNITED AGAINST CORRUPT GOVERNMENT'S EMERGENCY MOTION FOR REMAND OF OPEN MEETINGS ACT ("OMA") CASE AGAINST THE DETROIT CITY COUNCIL**

The City of Detroit ("City") responds to *Petitioners Robert Davis' and Citizens United Against Corrupt Government's Emergency Motion for Remand of Open Meetings Act ("OMA") Case Against the Detroit City Council* (the "Motion"), respectfully stating that Petitioners Robert Davis and Citizens United Against Corrupt Government (collectively, "Davis")[1] are incorrect in their

[1] The City is aware that Davis "**is not a named plaintiff** in the OMA Action against the Detroit City Council." (Doc. No. 8027, p. 7) (emphasis in original). He admits he is a Director of Citizens United, however, and has seen fit to petition this Court on its behalf. *Id.*, p. 2 n.1. Thus, the Response treats them collectively.

assertion that this matter should be remanded to the Wayne County Circuit Court. Davis's Open Meeting Act claim (the "Removed Matter") is within the jurisdiction of this Court because it is both core[2] and "related to" the City's bankruptcy case, is appropriate for resolution before this Court, and no equitable grounds exist to remand the case. Finally, Davis's request for sanctions is procedurally improper (in addition to being unfounded) and thus should be denied.

For these reasons, and for the reasons stated in the brief attached as Exhibit 1, the City requests that the Court not remand this adversary proceeding back to the Wayne County Circuit Court and that the request for sanctions be denied.

[2] In its removal notice, the City stated that the Removed Matter was not core. Upon further review of the transcripts from the closed sessions provided to the City less than two days prior to filing the removal notice and the pleadings filed in both this Court and the state court, the City amends its Notice of Removal to reflect that the Removed Matter is a core proceeding. A more detailed analysis of the core/non-core issue will be provided in the City's response to Davis's motion for mandatory abstention. Further, the transcripts have been provided for *in camera* review as ordered by this Court and in connection with the City's motion for summary judgment. (Doc. Nos. 9, 10.)

Respectfully submitted,

By: /s/ Marc N. Swanson

Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
swanson@millercanfield.com
green@millercanfield.com

Charles N. Raimi (P29746)
Deputy Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Coleman A. Young Municipal Center
Detroit, Michigan 48226
Telephone: (313) 237-5037
Facsimile: (313) 224-5505
raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

Dated: October 23, 2014

**<u>EXHIBIT 1</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |
| CITIZENS UNITED AGAINST CORRUPT GOVERNMENT, | |
| Plaintiff, | Adv. Case No. 14-05059 |
| v. | |
| DETROIT CITY COUNCIL, | |
| Defendant. | |

**THE CITY OF DETROIT'S BRIEF IN SUPPORT OF ITS RESPONSE TO PETITIONERS ROBERT DAVIS' AND CITIZENS UNITED AGAINST CORRUPT GOVERNMENT'S EMERGENCY MOTION FOR REMAND OF OPEN MEETINGS <u>ACT ("OMA") CASE AGAINST THE DETROIT CITY COUNCIL</u>**

In support of *The City of Detroit's Response to Petitioners Robert Davis' and Citizens United Against Corrupt Government's Emergency Motion for Remand of Open Meetings Act ("OMA") Case Against the Detroit City Council* ("<u>Response</u>") and in accord with E.D. Mich. LBR 9014-1(e)(1), the City submits this brief, respectfully arguing as follows:

## INTRODUCTION

Only this Court can provide a fair, impartial, and fully informed adjudication of Davis's Open Meeting Act ("OMA") claim (the "Removed Matter") because the issues discussed during the closed sessions are inextricably intertwined with the City's Bankruptcy Case. That is confirmed by the transcripts of the closed sessions, including the first session at which mediators Chief Judge Rosen and Eugene Driker were present.

This Court's Mediation Order protects the confidentiality of "[a]ll proceedings, discussions, negotiation, and writings incident to mediation . . . ." (Doc. No. 322, "Mediation Order," ¶ 4). The mediators' comments at the outset of the closed session informed and framed much of the ensuing discussions. Thus, in addition to the questions normally posed by a motion to remand—whether the court has jurisdiction over the matter and whether equitable considerations make remand inappropriate—the issue of whether this Court has sufficient jurisdiction to enforce its own Mediation Order also is before the Court in this instance.

Finally, not only was it conceivable that these sessions could affect the bankruptcy case, they in fact did. The result of these sessions was an agreement filed with this Court that prevented any disruption to the plan confirmation process and ensured support for the plan that this Court deemed necessary to the feasibility of the Plan. These sessions, and the issues discussed, would not have been present

but for the bankruptcy case. For these and other reasons, this Court has jurisdiction over the Removed Matter and it should not be remanded to the Circuit Court.

## I. **THIS COURT HAS JURISDICTION OF DAVIS'S REMOVED MATTER PURSUANT TO 28 U.S.C. § 1334(B)**

### A. **Analysis of jurisdiction provided by 28 U.S.C. § 1334(b).**

Title 28, section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." It is not necessary to parse out the differences between proceedings "arising in," "arising under," or "related to" a case under title 11; it suffices merely to apply the "related to" test. *Mich. Emp. Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1142 (6th Cir. 1991) ("[F]or purposes of determining section 1334(b) jurisdiction, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy."). If a matter is at least "related," jurisdiction over it will lie.

In 28 U.S.C. § 1334(b), "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex v. Edwards*, 514 U.S. 300, 308 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984)). While the grant of jurisdiction is not "limitless," it provides

bankruptcy courts with "jurisdiction over more than simple proceedings involving the property of the debtor or the estate." *Id.*

> The test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1334(b). Instead, there must be some nexus between the 'related' civil proceeding and the title 11 case.

*Pappas v. Buchwald Capital Advisors, LLC (In re Greektown Holdings, LLC)*, 728 F.3d 567, 577 (6th Cir. 2013) (internal quotations, alternations, and citations omitted); *see also Waldman v. Stone*, 698 F.3d 910, 916 (2012) (noting that a state law action "may be adjudicated in federal court on the basis of its relationship to the petition for reorganization.") (quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 72 n.26 (1982) (plurality opinion)).

"The key inquiry no doubt is conceivability. Certainty, or even likelihood of effect on the estate being administered in bankruptcy, is not a requirement." *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. Withum Smith Brown, P.C.*, 692 F.3d 283, 294 (3d Cir. 2012).

Courts have long upheld this standard, holding that "related to" jurisdiction is broad. *See e.g.*, *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 494-95 (6th Cir. 1996); *In re Phila. Newspapers, LLC*, 407 B.R. 606, 614 (E.D. Pa. 2009) (finding "related to" jurisdiction over a case based in part on the effect the case could have on the debtor's reorganization efforts). Thus, if there is any conceivable effect a matter may have on the administration of a bankruptcy case, the court presiding over the bankruptcy case has jurisdiction over that matter.

### B. The Removed Matter is "related to" the City's bankruptcy case.

The Removed Matter is "related to" the City's chapter 9 bankruptcy case in that the Removed Matter could not have occurred without it. Davis challenges the manner in which the City Council was receiving legal guidance regarding the City's bankruptcy case, its mediated settlements, and the Emergency Manager's continuing role regarding both. But for the City's chapter 9 case, the meetings could and would not have occurred. This shows that the meetings, and the Removed Matter challenging them, are at the very least "related to" the City's bankruptcy case.

The Removed Matter threatens to affect the City's bankruptcy case in several ways. It could (1) limit the City's ability to receive guidance from its counsel and the Emergency Manager with respect to the bankruptcy (and more);

(2) result in the City paying Davis's attorneys' fees; and (3) result in public release of discussions protected by the Court's Mediation Order. These outcomes are more than merely conceivable, giving this Court jurisdiction over the Removed Matter.

This conclusion is supported by the first action taken by Davis in the Removed Matter. Without any notice to the City, Davis sought, and received a very broad *ex parte* Temporary Restraining Order ("TRO") from the state court.[3] It prohibited the "Detroit City Council, their [sic] agents and employees, and other persons who are in active concert or participation with them [sic]" from meeting to discuss "the role of Kevyn Orr as the Emergency Manager" or "to discuss any orders, resolutions, or statutes pertaining to removing the City of Detroit from Receivership under Public Act 436." *See* TRO filed with Notice of Removal, Doc. No. 7907-1, pp. 47-48. The City Council thus was barred from receiving any private advice from counsel regarding steps it might take toward exiting from control under Public Act 436. Renewing this broad TRO could only lead to less-informed decisions by the Council. The TRO went further, however. Taken literally, as it must be, it appears the TRO also prevented the City Council's staff

[3] The TRO expired October 15, 2014, because it was entered on October 1, 2014. Temporary restraining orders issued without notice in matters removed to federal courts are governed by federal civil procedure and thus dissolve within 14 days. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 440 (1974).

from discussing resolutions that might improve the City's finances, as that could be viewed as working toward "removing the City of Detroit from Receivership." It even could be construed as prohibiting the Emergency Manager, who works in "active concert or participation with" the City Council,[4] from meeting with counsel to discuss how to word orders he wished to issue, as any order he has authority to issue will be promulgated with the goal of ending the City's financial emergency.[5] Thus, the broad TRO Davis sought and obtained extended far beyond the relief he initially claimed he sought. If entered as a preliminary injunction, it could seriously interfere with the administration of the City's bankruptcy case. Finally, the Removed Matter seeks costs and attorneys' fees from the City. Thus, Davis's claim that the Removed Matter would "in no way" affect the City's bankruptcy case is baseless. Motion, ¶ 10.[6]

---

[4] Paragraph 4 of Order No. 42, "Order Addressing Issues Relating to the Conclusion of the Emergency Manager's Tenure and Transition of City Operations to the Mayor and City Council," signed on September 25, 2014, provides that the "EM agrees to consult with the Mayor and the Council" regarding future orders that might be entered. See Exhibit. A.

[5] Davis may insist that such a reading was not intended, but the TRO is worded broadly. This illustrates the dangers of relying so heavily on *ex parte* relief—the City was never provided any opportunity to point this out to Davis and the state court before the Temporary Restraining Order was entered. Also, no proposed complaint was submitted by Davis as part of his request for relief from the automatic stay so the City had no idea of the specific actions he sought to take.

[6] Similarly baseless is Davis's assertion that the Court acknowledged that Davis's claims were meritorious; at most, the Court concluded that they were not "frivolous." Transcript, Exhibit B, 20:7-13.

## II. **ALTHOUGH UNNECESSARY FOR DETERMINATION OF THE REMAND MOTION, THE REMOVED MATTER IS ALSO CORE.**[7]

In addition to being related to the bankruptcy case, the Removed Matter is also a core proceeding. "A core proceeding either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." *Sanders Confectionery Prods., Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 483 (6th Cir. 1992); *Wolverine Radio*, 930 F.2d at 1144. "The court must look to both the form of and the substance of the proceeding to determine whether core status exists." *Wolverine Radio*, 930 F.2d at 1144. Generally, if an "action involves issues which arose because of a bankruptcy proceeding," it likely is core. *See id.* at 1144-45. "Further, the Sixth Circuit has recognized instances where issues based in state law considerations are so 'inextricably intertwined' with the bankruptcy proceeding that they are properly deemed 'core proceedings' despite the fact that they may require consideration of state law." *Kids World of Am., Inc. v. State of Georgia (In re Kids World of Am., Inc.)*, 349 B.R. 152, 161 (Bankr. W.D. Ky. 2006) (citing *Eglinton v. Loyer (In re G.A.D., Inc.)*, 340 F.3d 331, 336 (6th Cir. 2003)). That is the case here for the reasons discussed earlier. While the status of the Removed Matter as core or non-core does not directly affect removal and remand questions, core proceedings typically are not remanded. *See*

[7] The core/non-core issue will be discussed in further detail in the City's response to Davis's motion for mandatory abstention.

*Bank of Am., N.A. v. Lightstone Holdings, LLC (In re Extended Stay Inc.)*, 418 B.R. 49, 57 (Bankr. S.D.N.Y. 2009).

The Removed Matter challenges the closure of meetings which would not have occurred but for the City's chapter 9 case. *Sanders Confectionery Prods.*, 973 F.2d at 483 n.4; *Wolverine Radio*, 930 F.2d at 1144-45. The meetings occurred because of a bankruptcy proceeding, were held to discuss how best to proceed with regard to that bankruptcy proceeding, and allowed the City Council to receive not only advice from counsel but confidential information and comments from Court-appointed bankruptcy mediators regarding the bankruptcy proceeding.[8] These issues "arose because of a bankruptcy proceeding," rendering the matter core. *Wolverine Radio*, 930 F.2d at 1144-45. Public release of discussions that are protected not only by the attorney-client OMA exemption, but also by the pending litigation OMA exemption and the provisions of the Mediation Order, can harm the City both in connection with its bankruptcy proceeding and its implementation of the plan of adjustment. While the Open Meeting Act allegations obviously bring state-law considerations into play, such considerations are "so inextricably intertwined with the bankruptcy proceeding" that the Removed Matter can only be deemed "core." *Kids World of Am.*, 349 B.R. at 161.

[8] The City has provided copies of the transcripts for the Court's *in camera* review to verify this, as ordered and as an exhibit to its motion for summary judgment. (Doc. Nos. 9, 10.)

Again, the closed sessions involved discussions with mediators Chief Judge Rosen and Eugene Driker. This Court's Mediation Order protects the confidentiality of "[a]ll proceedings, discussions, negotiation, and writings incident to mediation . . . ." Mediation Order, ¶ 4. The mediators' comments at the outset of the closed session largely framed and informed the ensuing discussions. There is no question that this Court has jurisdiction to enforce its own Mediation Order. As such, the Court should exercise its discretion to determine that the Removed Matter should not be remanded. *Extended Stay*, 418 B.R. at 57.

## III. <u>THERE ARE NO EQUITABLE GROUNDS FOR REMAND.</u>

The City believes it is in all parties' best interests for this Court to hear and decide the Removed Matter. When considering the harms and benefits to both parties, the equities do not favor remand.

First, there is no harm to Davis. He asserts that he wishes to have the Removed Matter heard and decided. As noted previously, with the City's consent assured, this Court has the jurisdiction and, of course, the ability, to do just that in a prompt, fair, and fully-informed fashion.

Second, the City benefits from having this Court decide the Removed Matter. Davis has a penchant for "creative" use of court systems.[9] He favors

[9] Shortly before filing this Response, the City learned that Davis's attorney, Mr. Paterson, filed an involuntary bankruptcy petition against Robert Davis. See Exhibit C. The City is uncertain of whether this will cause any equitable or ethical

"emergency motions" and *ex parte* relief, as demonstrated by the multiple *ex parte* motions filed with respect to the Removed Matter.[10] The City is constantly forced to react to these contrived "emergencies" all while attempting to finalize its bankruptcy case and confirm the plan of adjustment. Further, Davis has already sought discovery in the Removed Matter even while his emergency motion for remand is pending, and before the City has even had a chance to respond to his Complaint. *See* Exhibit D. Also, he has threatened to take broad document discovery of Mayor Duggan and the Emergency Manager and also seeks deposition and/or trial testimony from all City Council members and various unidentified other officials. *See* Exhibit E.

Remanding the OMA lawsuit could further harm the City because the Wayne County Circuit Court Judge may mistakenly release portions of the transcripts due to her lack of familiarity with the Bankruptcy Case and the context

---

issues with regard to the Removed Matter. Due to the exigencies of filing this Response and other papers regarding the Removed Matter, at this time, the City can merely make the Court aware of the involuntary filing.

[10] Davis's motion for relief from stay was emergency and *ex parte*; his motion to the state court for a TRO was emergency and *ex parte* and resulted in the issuance of an *ex parte* TRO; his current motion for remand is emergency and *ex parte*; and so his is motion for mandatory abstention. If every motion is designated an emergency, then few likely are. *See In re Incredible Auto Sales*, No. 06-60855-7, 2007 WL 1485545 (Bankr. D. Mont. May 18, 2007) (noting an attorney's "overuse of the term 'emergency,'" and observing that "almost everything in this case was an emergency" as the court cut the requested attorneys' fees by over 80%.); *see also* Exhibit B, Transcript, 6:7-8 (regarding the likelihood of future violations of Open Meetings Act).

in which these discussions took place. The participants in the closed sessions, including Judge Rosen and Mr. Driker, reasonably believed they were able to talk freely. The Wayne County Circuit Court simply does not have the necessary experience with, or first-hand knowledge of, the Bankruptcy Case to make an informed determination of how the release of specific portions of the transcript might affect pending bankruptcy issues, or relationships between the City and third parties relating to the bankruptcy proceedings. Release of even one page of a transcript that should not be released can cause irreparable harm to the City either in the bankruptcy or its effort to successfully emerge from the bankruptcy.

Further, the state court's issuance of an overly broad *ex parte* TRO against the City—without an allegation that Davis even *attempted* to notify the City's counsel—confirms that the case should remain in this Court. The Court is best suited for reading the transcripts in the context of this proceeding and balancing the interests of the City's bankruptcy case with those of Davis.

In short, the relatedness of the Removed Matter to the City's bankruptcy case, the lack of prejudice to Davis, and, most importantly, this Court's ability to ensure that the Removed Matter not interfere with efficient administration of the City's bankruptcy case or its implementation of the plan of adjustment, all support this Court hearing and determining the Removed Matter.

## IV. DAVIS'S REQUEST FOR SANCTIONS SHOULD BE DENIED.

As a final matter, the City turns to Davis's request for sanctions. Motion, ¶ 9. The rules require that if a party seeks sanctions against an opposing party, it must first serve a motion for sanctions on the opposing party without filing it with the bankruptcy court. Fed. R. Bankr. P. 9011(c)(1)(A). Only after 21 days have passed may the motion be filed with the court. *Id.* Failure to adhere to this procedure renders the motion for sanctions procedurally defective such that it must be denied. *In re LTV Steel Co.*, 357 B.R. 118, 121 (Bankr. N.D. Ohio 2006). As Davis has not followed this procedure, his request for sanctions should be denied, wholly apart from the fact that his request is substantively frivolous.

## V. CONCLUSION

For these reasons, the City asks this Court to (1) determine the Removal Matter, which Court the City believes is better equipped to balance Davis's obvious desire for speed with the requirements of due process and the concerns of the confirmation process, and (2) deny Davis's request for sanctions.

Respectfully submitted,

By: /s/ Marc N. Swanson

Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
swanson@millercanfield.com
green@millercanfield.com

Charles N. Raimi (P29746)
Deputy Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Coleman A. Young Municipal Center
Detroit, Michigan 48226
Telephone: (313) 237-5037
Facsimile: (313) 224-5505
raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

Dated: October 23, 2014

# EXHIBIT A

DETROIT CITY CLERK
2014 SEP 25 P 7:03

**EMERGENCY MANAGER**
**CITY OF DETROIT**

**ORDER No. 42**

# ORDER ADDRESSING ISSUES RELATING TO THE CONCLUSION OF THE EMERGENCY MANAGER'S TENURE AND TRANSITION OF CITY OPERATIONS TO THE MAYOR AND CITY COUNCIL

BY THE AUTHORITY VESTED IN THE EMERGENCY MANAGER
FOR THE CITY OF DETROIT
PURSUANT TO MICHIGAN'S PUBLIC ACT 436 OF 2012,
KEVYN D. ORR, THE EMERGENCY MANAGER,
ISSUES THE FOLLOWING ORDER:

*Whereas*, on March 28, 2013, Michigan Public Act 436 of 2012 ("PA 436") became effective and Kevyn D. Orr became the Emergency Manager (the "EM") for the City of Detroit (the "City") with all the powers and duties provided under PA 436; and

Pursuant to Section 9(2) of PA 436, the EM "shall act for and in the place and stead of" the City's Mayor (the "Mayor") and the Detroit City Council (the "Council"); and

Section 9(2) of PA 436 further provides that, during the pendency of the receivership, the Mayor and the Council may exercise such powers "as may be specifically authorized in writing by the [EM] or as otherwise provided by [PA 436] and are subject to any conditions required by the [EM];" and

On July 18, 2013, consistent with the authorization of the Governor of the State of Michigan provided under Section 18(1) of PA 436, the City filed a petition for relief pursuant to chapter 9 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (as it may be amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") with the case caption of "*In re City of Detroit, Michigan*, Case No. 1353846" (the "Bankruptcy Case"); and

On September 16, 2014, the City filed a Seventh Amended Plan for the Adjustment of Debts of the City of Detroit (Docket No. 6908) (as it may be further amended, modified, corrected or supplemented, the "Plan of Adjustment"), and the City is pursuing the Bankruptcy Court's entry of an order confirming the Plan of Adjustment pursuant to the Bankruptcy Code (the "Confirmation Order"); [1] and

Section 9(6)(c) of PA 436 provides that the EM may be removed after 18 months in office (such time before removal, the "EM Tenure"); and

On September 25, 2014, consistent with Section 9(6)(c) of PA 436, the City, through the Council and the Mayor, has taken action to remove the EM as of the Effective Date of the Plan of Adjustment (the "City Removal Action"); and

As the end of the EM Tenure approaches and in anticipation thereof and in consideration of the terms of the City Removal Action, the EM believes that this Order is appropriate to: (a) promote the successful transition of City governance from EM back to the Mayor and the Council so they can provide or cause to be provided necessary governmental services essential to the public health, safety and welfare; (b) assist in the City's efforts to rectify its financial emergency; and (c) otherwise fulfill the intents and purposes of PA 436 and chapter 9 of the Bankruptcy Code; and

As part of this Order, the EM has determined, among other things, that (a) certain provisions of previous EM Orders shall be modified, revoked or supplemented; (b) the Mayor, the Council and others shall have responsibility for the orderly and efficient management of the City and the ongoing efforts to rectify the City's financial emergency; and (c) the terms hereof are appropriate to provide for a smooth transition at the conclusion of the EM Tenure and to promote the long-term financial recovery of the City and the health, safety and welfare of the public.

---

[1] As applicable, capitalized terms not otherwise defined herein have the meanings given to them in the Plan of Adjustment.

**It is hereby ordered that:**

*Restoration of City Governance*

1. The powers and authority of the Mayor and the Council that previously were exercised by the EM are hereby restored effective immediately as set forth herein. All salaries and benefits of the Mayor and the members of the Council shall be provided in the normal course. In particular, whereas PA 436 permits the officers of the City to exercise operational control and fulfill their governmental functions during the EM Tenure and with EM approval, the EM agrees that the Mayor and the Council will have, and may exercise, authority over the City's day-to-day operations and activities effective immediately.
2. Previous orders of the EM relating to the powers of the Mayor and the Council and their salaries and benefits (i.e., EM Order Nos. 1, 3, 10, 20 and 31) are hereby rescinded to the extent inconsistent with this Order.

*EM Retained Powers and Duties*

3. The EM agrees not to exercise his powers under PA 436 to interfere with the powers restored to the Mayor and the Council under paragraph 1 above. The EM further agrees that he will exercise his powers under PA 436 through the conclusion of the EM Tenure only with respect to any action, or the prevention of action, that is necessary or convenient to the purposes described below.

   a. Management of the Bankruptcy Proceeding. The EM has and will exercise the power to act exclusively on the local government's behalf in the Bankruptcy Case and related proceedings, including, but not limited to, (a) the power to make or authorize filings in the Bankruptcy Case and in any related cases or appeals and (b) the power to secure the services and direct the conduct and payment of all experts, advisors, entities or others that have been retained as of the date of this Order to assist in the Bankruptcy Case and related proceedings, or that the EM determines are necessary based on future developments in the Bankruptcy Case or related litigation.

   b. Implementation of the Plan of Adjustment. Without limiting the foregoing, the EM has and will exercise the power to take all actions necessary and convenient to obtain confirmation of the Plan of Adjustment and bring into effect the provisions of such confirmed Plan of Adjustment, the Confirmation Order or any other Bankruptcy Court order related to the Bankruptcy Proceeding, or any exhibit to any of the foregoing. This power shall include the power to execute on behalf of the City all documents necessary or appropriate to effectuate any transaction contemplated in the Plan of Adjustment. Specifically, the EM will exercise power and authority relating to the following:

      i. The LTGO Settlement;

ii. The UTGO Settlement;

iii. The DIA Settlement;

iv. The settlement with the State related to its participation, including the State Contribution Agreement;

v. The 36th District Court Settlement;

vi. All transactions necessary to facilitate the various settlements with city retirees, including, but not limited to, those regarding health care and pension benefits (including, but not limited to, the Retiree Health Care Settlement Agreement, the Restoration Trust Agreement, the Detroit General VEBA Trust Agreement and the Detroit Police and Fire VEBA Trust Agreement);

vii. All transactions necessary to facilitate the various settlements related to the Detroit Water and Sewerage Department ("DWSD"), including but not limited to:

    A. The DWSD tender offer and related financings; and

    B. Creation of the Great Lakes Water Authority and associated transactions, including as set forth in the Memorandum of Understanding, dated September 9, 2014, among the City, the State, Oakland County, Macomb County and Wayne County;

viii. All transactions needed to secure and implement an Exit Facility and, until that time, compliance with the terms of the existing Postpetition Financing Agreement and Postpetition Financing Order;

ix. All steps necessary to secure self-insurance coverage for (A) worker's compensation and (B) operation of City motor vehicles;

x. The Syncora Settlement, including the Development Agreement and the other settlement documents attached to or referenced in the Plan of Adjustment;

xi. The issuance and distribution of the securities provided by the Plan of Adjustment; and

xii. Any other transactions or agreements (including related revisions to the Plan of Adjustment) that are reasonable or appropriate to resolve remaining objections to confirmation of the Plan of Adjustment, implement and give effect to the other

provisions of the Plan of Adjustment and the settlements incorporated therein and the address any confirmation issues raised by the Bankruptcy Court.

4. The EM agrees to consult with the Mayor and the Council regarding the terms of any EM Order to be entered after the date hereof and in advance of the Effective Date, and the EM agrees that any such order will be limited to matters related to implementation of the Plan of Adjustment, the conduct of the Bankruptcy Case, the transition of remaining governmental power to the City or any other matter required by law.

5. For the avoidance of doubt, nothing herein shall require the EM to take, or refrain from taking, any action required by applicable law.

*Executive Branch Reorganization Plan*

6. To assist in the City's efforts to rectify its financial emergency and provide or cause to be provided necessary governmental services essential to the public health, safety and welfare, the Mayor and the Council are authorized restructure City government pursuant to the terms below:

    a. The Mayor may submit a proposed executive branch reorganization plan to the Council. The plan may provide for the creation, abolition, reassignment, re-naming or reorganization of any department, agency, division, or senior management position within the executive branch, and/or the duties or responsibilities of any such department, agency, division or senior management position in the executive branch. The Mayor may propose amendments at any time to any previously adopted executive branch reorganization plan. In addition to those positions exempt from the classified service by other provisions of this charter, any reorganization plan or amendment may provide for the creation of executive management positions totaling no more than 60 additional positions to serve at the pleasure of the Mayor; provided, however, this provision shall not apply to employees covered by a collective bargaining agreement. All amendments to the plan must originate with the Mayor.

    b. The Council may approve or reject a proposed reorganization plan or any proposed amendment. If the Council fails to act on the proposed plan or a proposed amendment within 45 days after its submission, the plan or the amendment becomes

effective. Any executive branch reorganization plan submitted by the Mayor may include the Law Department as if such department were a department under the executive branch.

c. Without limiting the foregoing, the director of each City executive department and the Law Department, shall be appointed by and serve at the pleasure of the Mayor. Nothing in this paragraph shall restrict or otherwise alter the authority of the Council to confirm positions that are subject to confirmation under City Charter.

d. Any at-will position created by an EM Order shall count as one of the 60 position limitation, whether or not such position serves at the pleasure of the Mayor.

e. If the Council, in its sole discretion, believes that Corporation Counsel has a conflict of interest, the Council may retain independent counsel.

*Departmental Restructuring*

7. Notwithstanding any City or human resources rule, regulation, policy, agreement, ordinance or practice to the contrary, including, but not limited to, the City's Civil Service Rules, and with the approval of the Mayor and the Council in coordination with the Human Resources Department, the City may implement departmental restructurings not inconsistent with any other EM Order. These restructurings may grant department heads the authority to make hiring, retention, promotion, demotion, reassignment and any other related personnel decisions affecting their departments, in consultation with the Human Resources Department. Such reorganizations shall comply with the terms of applicable collective bargaining agreements and provide required notices to impacted employees and labor unions, if applicable.

*City of Detroit Police Commission; Police Chief*

8. Notwithstanding anything to the contrary in EM Order No. 11, the following powers of the Board of Police Commissioners shall be reinstated effective immediately:

   a. The power to consult with the Chief of Police, and with the approval of the Mayor, establish policies, rules and regulations;

   b. The power to review the departmental budget prior to its submission to the Mayor and to make recommendations to the Mayor regarding such budget;

   c. The power to receive, investigate (including the power to subpoena witnesses, administer oaths, take testimony and require the production of evidence, and to apply to the appropriate court for enforcement of same, and to continue its current investigative staffing levels for this purpose), and recommend resolution of complaints to the Mayor concerning the operation of the Police Department;

   d. The power to forward all allegations of criminality to the appropriate internal or external law enforcement agency for further investigation; and

   e. The power to make an annual report to the Mayor, the Council and the public of the handling of such complaints.

   All other powers granted to the Chief of Police by Order No. 11 shall continue

9. The Mayor shall have the authority to negotiate and execute a contract that, among other things, extends the current Chief of Police's service to the City.

*Tax Collection*

10. The City and the State have been negotiating an agreement regarding the State's collection of City income taxes (a "Tax Collection Agreement"), which is important to the City's restructuring efforts. Notwithstanding any City Charter or ordinance provisions to the contrary regarding contract approval processes, the Mayor and the City's Chief Financial Officer (the "CFO") shall take such steps as may be appropriate to assist in negotiating a Tax Collection Agreement and shall promptly enter into and consummate any Tax Collection Agreement negotiated with the State. Within 120 days after the date of execution of a Tax Collection Agreement, the Mayor and the CFO shall take all steps necessary and appropriate to align the City's tax-related processes to effectuate the requirements of this paragraph.

*Other EM Orders*

11. EM Order No. 5 relating to the transfer of real property owned by the City is revoked and rescinded except that any transfers of real property required under the Plan of Adjustment or the transactions contemplated thereby shall continue to be subject to EM Order No. 5 through the end of the EM Tenure.

12. EM Order No. 7, requiring EM approval of all CDBG, HOME and NSP grants, is revoked and rescinded in its entirety.

13. The City's Inspector General (the "IG") and City's Auditor General (the "AG") shall prepare and deliver a final written report (the "Final IG/AG Report") to the Mayor and the Council within 90 days of the date of this Final EM Order with respect to the subject matter of the 60 Day Report (as defined in EM Order No. 8) and updated reports described in EM Order No. 8. If the EM Tenure has not concluded, a copy of the Final IG/AG Report also shall be provided to the EM. Upon receipt of the Final IG/AG Report by the Mayor and the Council (and, if applicable, the EM), the IG's and the AG's duties under paragraph 3 of EM Order No. 8 shall terminate.

*Reporting*

14. The Human Resources Director shall file any employment position or new classification that is created on or after the date of this Order with the City Clerk and the Council on the 15th day of each month (or if such date is not a business day, the next succeeding business day), commencing on November 17, 2014. Such report shall include the compensation range of that employment position. Any new position that is created and filled shall be within available appropriations.

*Administrative Matters*

15. Nothing in this Order shall be interpreted as contrary to applicable law.

16. This Order is effective immediately upon the date of execution below.

17. If any component of this Order is declared illegal, unenforceable or ineffective by a court of competent jurisdiction, such component shall be deemed severable so that all other components contained in this Order shall remain valid and effective.

18. This Order shall be distributed to the Mayor, Council members and all department heads.

Dated: September 25th, 2014

By: ______________________
Kevyn D. Orr
Emergency Manager
City of Detroit

cc: Governor of the State of Michigan
State of Michigan Department of Treasury
Mayor Michael Duggan
Members of Detroit City Council
City Department Heads

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: CITY OF DETROIT, MICHIGAN, | . | Docket No. 13-53846 |
| | . | Detroit, Michigan |
| | . | September 29, 2014 |
| Debtor. | . | 9:06 a.m. |

. . . . . . . . . . . . . . . . .

HEARING RE. (#7667) EMERGENCY MOTION FOR RELIEF FROM STAY AND WAIVING THE FRBP 4001(a)(3) FILED BY CREDITOR CITIZENS UNITED AGAINST CORRUPT GOVERNMENT; CONTINUED TRIAL RE. OBJECTIONS TO CHAPTER 9 PLAN
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:

Jones Day
By: HEATHER LENNOX
222 East 41st Street
New York, NY 10017
(212) 326-3837

Jones Day
By: GREGORY M. SHUMAKER
GEOFFREY S. STEWART
THOMAS CULLEN
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939

Jones Day
By: DAVID G. HEIMAN
North Point, 901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-3939

Pepper Hamilton, LLP
By: ROBERT S. HERTZBERG
4000 Town Center, Suite 1800
Southfield, MI 48075-1505
(248) 359-7333

Miller, Canfield, Paddock & Stone, PLC
By: MEGAN P. NORRIS
150 West Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420

APPEARANCES (continued):

| | |
|---|---|
| For Citizens United Against Corrupt Government: | Paterson Law Office<br>By: ANDREW A. PATERSON, JR.<br>46350 Grand River Avenue, Suite C<br>Novi, MI 48374<br>(248) 568-9712 |
| For Financial Guaranty Insurance Company: | Weil, Gotshal & Manges, LLP<br>By: EDWARD SOTO<br>1395 Bricknell Avenue, Suite 1200<br>Miami, FL 33131<br>(305) 577-3177 |
| For Macomb County Drain Drainage District: | Dechert, LLP<br>By: DEBRA O'GORMAN<br>1095 Avenue of the Americas<br>New York, NY 10036<br>(212) 698-3600 |
| For AFSCME: | Miller Cohen, PLC<br>By: RICHARD MACK, JR.<br>6700 West Lafayette Blvd., 4th Floor<br>Detroit, MI 48226-3191<br>(313) 566-4787 |
| For Ad Hoc Water and Sewer Bondholders: | Kramer Levin Naftalis & Frankel, LLP<br>By: JONATHAN M. WAGNER<br>1177 Avenue of the Americas<br>New York, NY 10036<br>(212) 715-9393 |
| Court Recorder: | LaShonda Moss<br>United States Bankruptcy Court<br>211 West Fort Street, 21st Floor<br>Detroit, MI 48226-3211<br>(313) 234-0068 |
| Transcribed By: | Lois Garrett<br>1290 West Barnes Road<br>Leslie, MI 49251<br>(517) 676-5092 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

THE COURT: Let's turn our attention to the emergency motion for relief from stay, please.

MR. PATERSON: Andrew Paterson on behalf of the petitioners.

MS. NORRIS: Megan Norris of Miller Canfield --

THE COURT: All right. Stand by one second while those who would like to leave the courtroom get an opportunity to do that.

MR. THORNBLADH: Thank you, your Honor.

MS. JENNINGS: Thank you, your Honor.

THE COURT: You're welcome. Let's give folks one more minute. And I think we are ready to proceed, sir.

MR. PATERSON: Your Honor, this is petitioner's -- movant's motion for relief from the stay for purposes of filing in the Wayne County Circuit Court an open meetings case against the Detroit City Council. And I would first indicate that the ideal of a democratic government is too often thwarted by bureaucratic secrecy and unresponsive officials. Citizens frequently find it difficult to discover what decisions are being made and what facts lie behind those decisions. The Open Meetings Act protects citizens' right to know what's going on in government by opening to full public view the process by which elected and nonelected officials make decisions on citizens' behalf. Those are not my words. Those are the words of the Michigan legislature upon the

introduction of the Open Meetings Act and the Freedom of Information Act in 1976 in the post-Watergate era. The Section 3 of the Open Meetings Act states in its very first sentence, "All meetings of a public body shall be open," and the law as it is developed construes exemptions from that narrowly and broadly protects the right of citizens to know what's going on in their government.

The response from the debtor on behalf of the city council indicated, and I think correctly, that the violation of the Open Meetings Act is not really the issue before this Court, and I think that's correct, although the bulk of the response did try to repeat over and over and over again that it was a permitted meeting under various exemptions, particularly the legal matters. The evidence that the movants intend to introduce would be the extensive public statements about the meetings from the participants in the meetings indicating that there were negotiations and discussions for three full days. I think it was a patent violation of the Open Meetings Act, and the plaintiffs intend to seek as well as a declaration of that an injunction against further violations by the Detroit City Council with respect to the Open Meetings Act.

THE COURT: Well, how do you deal with the city's argument that your claim is moot?

MR. PATERSON: It's not. I mean they've

indicated --

THE COURT: How do you deal with it? What's your response?

MR. PATERSON: They've indicated repeatedly that these were meetings and discussions addressing the facts behind the decisions, and those are clearly covered by the Open Meetings Act. The city's response or the debtor's response is the response that it may want to make to a circuit judge, but for purposes of this Court's relief, the merits of the case aren't really before it, although I'm confident this is a lay-down open meetings violation. The city has failed in its response to point to any specific harm that would happen to this proceeding or in this court. They've made --

THE COURT: Well, but I need an answer to my question because if the matter is moot, there's no sense in granting relief from the stay.

MR. PATERSON: I'm seeking an injunction.

THE COURT: What's not moot about it?

MR. PATERSON: I'm seeking --

THE COURT: What relief can a court provide to your clients?

MR. PATERSON: The Circuit Court can and probably will enjoin them from further violations of the Open Meetings Act. Citizen's right to know. It's a fundamental right of

every citizen of this state to see that public bodies --

THE COURT: But there's no more --

MR. PATERSON: I did in our motion --

THE COURT: Let me just -- let me just finish my question.

MR. PATERSON: Yeah. Go ahead.

THE COURT: There's no more imminent or threatened violation of the Open Meeting Act at this point.

MR. PATERSON: The circuit judge may determine that and may not issue an injunction, but I am going to seek an injunction against further violations. I must say I have in the past sued the city's city council for past violations. This is not a new thing to disregard the public's right to know. I don't understand it as a philosophy of governance. I would think that you would want to educate your constituents as to all of the issues behind all of your decisions so that they better understand it and don't suspect that there's some secret deal, I think particularly in this case. There's not been any decision made by this city council other than the initial one back 18 months ago that's been more important. The citizens are wondering.

THE COURT: What happened 18 months ago?

MR. PATERSON: Mr. Orr was accepted and appointed to the emergency manager position under Act 43 --

THE COURT: Did the city council do that?

MR. PATERSON: City council did not oppose it. I think it was a five to four vote, as I recall, or four -- it was a one vote majority. That's that last decision that the council made that had the importance to this decision, and I don't think that there's any particular dispute with the merits of the decision. It's probably a good thing. I don't think that's the issue. I think the way they have gone about it in hiding it from their constituents is the issue. That doesn't serve the public interest well. It doesn't --

THE COURT: Does the law require a public body to open up its meetings when it's seeking legal advice from its attorneys?

MR. PATERSON: I think it's pretextual that they said that. How do you negotiate --

THE COURT: Please answer my question.

MR. PATERSON: Oh, the law permits certain matters that are legal matters that are involved in litigation but also in the public body's obligations under contract or the law to be discussed, and they do allow them to be discussed in private.

THE COURT: And so why -- where is the evidence that something other than that happened here?

MR. PATERSON: The evidence is in the public statements of the participants in the meeting.

THE COURT: Like what?

MR. PATERSON: Pardon?

THE COURT: Like what? Name one.

MR. PATERSON: Three days of negotiations. Even in their own brief, they talked about reaching a consensus. All of the facts that underlie the decision that was made and the agreements that were reached have been excluded from the public view.

THE COURT: Now, you said there were public statements that suggest that something at these meetings happened other than council deliberating with its attorneys on legal matters.

MR. PATERSON: I do say that. I do say that, and I think the defendants --

THE COURT: I'd ask you to identify one.

MR. PATERSON: The defendants indicate that in their response. They indicate that the closed sessions were conducted for the purposes of obtaining legal advice. They've said that repeatedly, repeatedly, repeatedly, but they also indicate --

THE COURT: The fact that they state it repeatedly doesn't make it wrong.

MR. PATERSON: No, but if I call a dog's tail a leg, he still only has four legs, as Lincoln observed.

THE COURT: Okay.

MR. PATERSON: The statement in the defendant's

response indicates that they reached a consensus and that the consensus was reflected in the agreements that were signed and authorized by the city council. Those agreements --

THE COURT: Well, but they were -- it was a -- it was a consensus concerning this litigation.

MR. PATERSON: It's a consensus as to how to proceed with respect to the future --

THE COURT: This litigation.

MR. PATERSON: I don't see that as an exemption under the Open Meetings Act.

THE COURT: Well, but --

MR. PATERSON: All public meetings -- all meetings --

THE COURT: I thought you had already admitted that there was an exemption for legal advice relating to litigation.

MR. PATERSON: Yes, and I think the public statements by the participants in the meeting indicate that was pretextual, very simply pretextual.

THE COURT: Okay. But I'm asking you --

MR. PATERSON: In fact, you don't need to see the smirk of the mayor when he was asked that question to know that it was pretextual. Other members that attended the meeting saw that they had a lot of negotiations to do over the timing and all of those issues that were involved that

are substantive.

THE COURT: But I'm asking you why isn't all of that covered by the exemption?

MR. PATERSON: It's not. It's not legal matters.

THE COURT: But to tell me it's not doesn't answer my question. Why isn't it? What's the --

MR. PATERSON: Participating --

THE COURT: What's the legal analysis that establishes that it's not?

MR. PATERSON: Participating in a negotiation with parties is not legal analysis. That's not discerning legal analysis. That's my right to participate in a negotiation, and the city council is told that in their legal opinion, and then they proceed to negotiate. Those are public discussions.

THE COURT: But it's negotiation over a legal matter in litigation.

MR. PATERSON: It does not exempt the facts that underlie the decision and the consensus and the discussions that were reached with respect to this. Not all legal --

THE COURT: What's the best case you've got in support of your position?

MR. PATERSON: I think I cited them in my brief, and they do address the scope of the legal exemption. It's certainly in the context of litigation it can arise. It is

also, though, important to know what were the bases reached for some compromise within those litigations or the facts underlying -- the discussion of the facts underlying and the truth of those facts. The substance of that decision is the kind of decision that a Circuit Court would make.

THE COURT: Well, let me propose -- let me propose to you a hypothetical. Counsel for the city wants to give -- all right. The term "counsel" obviously has two distinct meaning here. The attorney for the city wants to give the council -- the city council legal advice on how to settle a personal injury suit and explain why he's recommending a settlement at X dollars. Okay. They go into closed session because it's in litigation, and one of the members says, "I don't want to -- I don't think we should settle this for X. I think we should settle it for Y," and they continue to have a discussion with the attorney about the legal merits of the case, the strengths and weaknesses on each side, and they come to a resolution to offer a settlement at Z. How much, if any, of that needs to be in public under the Open Meetings Act?

MR. PATERSON: The legal obligations or the recommendation of the attorney if it's in writing is certainly something that can be discussed. Why did you reach that number, why do you propose settling it, and here's what I propose settling it for because of and gives them the

merits, objections to it, discussion of it, starts to borderline whether or not that is exempt. That's the circuit judge's obligation to determine in the proceeding, and the minutes --

THE COURT: So your position is that even the attorney's statement of reasons why the case should not be settled at Y, it should be settled at X, is something that might be subject to the Open Meetings Act?

MR. PATERSON: Might be; might be. Not likely, but might be. More than often -- more often than not there will be a consensus reached, but the discussions here travel beyond the settlement of a lawsuit. This is the active participation of the city in its future of the most fundamental aspects of it and the regaining of the power to do that. That was what was on the table according to Mr. Orr and his orders that were entered in respect to that. Those are matters that reach well beyond the legal obligations of the city and involve widespread negotiation over the regaining of the power of the elected members of the city council.

THE COURT: Well, but all in relation to the administration of this bankruptcy from the city's perspective.

MR. PATERSON: The city is also obligated and the emergency manager is also obligated to administer the city

and administer under the law all of the obligations of the city and the business of the city. They can't blanket the business of the city with a, well, it's in Bankruptcy Court; therefore, the stay is a shield against violations of the Open Meetings Act and other violations of law.

THE COURT: Anything further, sir?

MR. PATERSON: No, other than I did in my motion indicate to the Court that I'm not seeking to undo, as I'd have the right to do under the Open Meetings Act, the actions taken. The relief that we're seeking in the Circuit Court would be prospective only, and it would be prospective with respect to further violations of the Open Meetings Act by the Detroit City Council.

THE COURT: And of course you'd want attorney fees.

MR. PATERSON: And of course I would want attorney's fees.

THE COURT: Thank you.

MR. PATERSON: Thank you.

MS. NORRIS: Good morning, your Honor. Megan Norris on behalf of the city. I'll be brief. It's clear that you've reviewed everything. First of all, the timing of the motion and the substance of plaintiff's motion makes it clear that the events at issue are over. Plaintiffs filed their motion mid-day on Thursday. By the end of the day Thursday, the city and state had filed with this Court a joint notice

of transition plan, which outlines a proposed transition from the emergency manager to the city elected officials. Plaintiff in their motion does not -- petitioners don't argue that there have been any other violations of the Closed Meetings Act by city council. City council has been in and out of closed session for a number of reasons on a number of occasions since this bankruptcy trial began. The only issue are the meetings that have just taken place. One of the Garzoni factors is the creditor's claim -- whether the creditor's claim is likely to succeed on the merits, and as the Court has noted, there is no evidence of any violation. The meeting was properly closed. The statute was cited. The transition -- the subject being the transition, specifically PA 436 transition matters, was cited in city council's closure resolution. This was not a blanket business of the city closure. This was not even a blanket attorney-client privilege closure. This was specifically to discuss the memoranda of counsel and the advice of counsel and discussion of the memoranda relating to the transition. Clearly there can be harm to the city if this is allowed to go forward at this time, and that really is the question. It's not whether it can go forward. It's whether it can go forward at this time, whether the stay should be lifted. As this Court has noted repeatedly in the trial in front of it as we speak, the issue on the plan of adjustment is not simply whether debts

can be resolved. The issue is also whether the city has a viable plan to go forward, and a big part of that plan is how the city moves from the emergency manager that has effectively guided the city through this bankruptcy back to the elected officials as the city goes forward to allow a lawsuit against exactly those players, city council, but obviously the mayor would be involved. Obviously the emergency manager would be involved. To allow a lawsuit involving those folks to go forward at this time would be detrimental to exactly what this Court is trying to accomplish in smoothing the transition of the city out of bankruptcy. If you have any questions, I'm happy to answer them.

THE COURT: What's the connection given that Mr. Paterson says all he wants is an injunction against future violations of the Open Meetings Act?

MS. NORRIS: Right. So the connection is it's a law -- first, he has to prove a violation, so there's a lawsuit, and in that lawsuit there will be arguments about what happened or didn't happen. That will require at minimum an in camera review of what happened in closed session. In many cases Mr. Paterson has sought to take depositions of people involved to determine whether the mayor's smirk -- I use Mr. Paterson's term -- means anything, to determine whether, as in the Wyoming case, there were winks or nods or

slips of paper across the table, so there's discovery in that case. So before there's any finding of a violation, before any injunction is issued, before any attorney's fees are awarded, there has to be a finding, and that is exactly the kind of action that the city does not need to be going through right now. It is a very sensitive area. The orders have been issued. You've seen the transition, the joint notice of transition. As Mr. Paterson noted, there was a city council meeting at the beginning not to oppose the appointment of Kevyn Orr, and there has been a meeting at the end. The parties have agreed that there is a date certain -- i.e., the effective date of the plan of adjustment -- and Mr. Orr has begun the transition, so there's no evidence that there would be meetings on this topic going forward. If there were, they would be noticed in the same way, but to say that the notice was pretextual in some way when the results of the meeting are exactly the topic identified in the legal memoranda, it's not like the results of the meeting are something unrelated to exactly what was identified. The transition plan is absolutely without any support.

THE COURT: Thank you.

MS. NORRIS: Thank you.

MR. PATERSON: If the Court is concerned, I'm fairly satisfied that there's ample evidence that won't require the deposition of the mayor or the emergency manager in this

case. Statements made by city council members and others are public and ample, and I, frankly, expect that they will have to admit those statements once the proceeding has begun.

THE COURT: The city questions why this can't wait, if it needs to be pursued at all, until after the bankruptcy is over.

MR. PATERSON: The injunction relief would prevent further violations of the Open Meetings Act and allow the citizens to see what decisions are being made in public and what the facts are that lie behind those decisions.

THE COURT: Well, fair enough, but you don't have any evidence of any imminent or threatened violation of the Open Meetings Act other than, well, they did it once, so they might do it again.

MR. PATERSON: I think that question flips the burden. I think the proceeding, if the stay were lifted, is not going to affect this Court's actions or anything in this Court whatsoever. It's going to carry on independent of that, and there's absolutely no burden on this Court by removing and lifting the stay with respect to this litigation, and, in fact, I think that --

THE COURT: Well, the argument isn't based on burden on this Court. The argument is based on burden to the city in having to address your lawsuit while it's trying to wrap up this --

MR. PATERSON: The city --

THE COURT: -- critical litigation here.

MR. PATERSON: The city law department has had little to do during this proceeding because many of the cases that were stayed did not proceed. I know for --

THE COURT: You're concerned about full employment for the city law department?

MR. PATERSON: I think they're more than able and capable of defending this action.

THE COURT: Well, but it's not just the law department. It's the city.

MR. PATERSON: I don't see how potentially, I guess, a deposition -- if there's a failure to admit public statements that were made and a request for that admission is denied, I suppose at that point I need to take the deposition of the person that made the statement, and in most cases it's members of the city council that were explaining their vote and why they carried out for three days the discussions on this matter. That doesn't seem to impose any burden on this Court.

THE COURT: All right. Thank you. Anything further?

MR. PATERSON: Thank you.

MS. NORRIS: No, your Honor.

THE COURT: All right. I'll take this under

advisement for 15 minutes, and we'll reconvene at 9:45, please.

THE CLERK: All rise. Court is in recess.

(Recess at 9:30 a.m., until 9:50 a.m.)

THE CLERK: All rise. Court is back in session. You may be seated.

THE COURT: It appears everyone is present. The standard by which the Court determines this and other motions for relief from the stay is whether the moving party has established cause. The matter is, of course, addressed to the Court's discretion. In evaluating whether there is cause for relief from the stay, the Court considers the harm to the moving party if the stay is maintained and the harm to the debtor if this motion is granted and relief from stay is granted. In this case, if relief from the stay is denied and the stay is maintained in effect, the plaintiffs will be forced to wait to pursue their claim against the city until the stay terminates, which would happen either upon confirmation or dismissal of the case. If the motion is granted, the city will be, of course, required to defend the lawsuit that would be filed.

The city maintains that the lawsuit is moot and that it otherwise lacks merit under the Open Meetings Act and that it should not be forced to defend a lawsuit that is either moot or lacks merit or both. There are certainly aspects of

the claimed violation of the Open Meetings Act that are moot, but it appears that there are aspects that are not moot. For example, the motion states that if the Circuit Court were to find a violation of the Open Meetings Act, the plaintiffs would seek disclosure of certain materials relating to the closed meeting such as minutes or transcripts, et cetera.

The Court also must find in the circumstances that the claimed violation of the Open Meetings Act is not a frivolous claim. If it were, the Court, of course, would not grant relief from the stay since no party should be required to defend a frivolous action. The claim is not frivolous. The city has a defense to it, perhaps even a strong defense, but the claim itself is not a frivolous claim.

On the city's contention that the requirement to defend the lawsuit may somehow impact its ability to efficiently pursue this bankruptcy, the Court must find that there is really nothing to support or suggest that.

Accordingly, in the circumstances, the Court concludes that its discretion should be exercised in favor of granting the motion, and the motion is granted. Mr. Paterson, please prepare an order, have it approved as to form by city counsel -- the city's attorneys and have it -- and then submit it to the Court.

MR. PATERSON: Will do, your Honor. Thank you.

THE COURT: All right. Let's turn our attention

# EXHIBIT C

B 5 (Official Form 5) (12/07)

# UNITED STATES BANKRUPTCY COURT

Eastern District of Michigan

## INVOLUNTARY PETITION

| IN RE (Name of Debtor – If Individual: Last, First, Middle) | ALL OTHER NAMES used by debtor in the last 8 years (Include married, maiden, and trade names.) |
|---|---|
| Robert Trevor-Blair Davis, Sr. | Robert Davis<br>Robert T. Davis |
| Last four digits of Social-Security or other Individual's Tax-I.D. No./Complete EIN (If more than one, state all.):<br>XXX-XX-5176 | |
| STREET ADDRESS OF DEBTOR (No. and street, city, state, and zip code)<br>180 Eason<br>Highland Park, MI 48203 | MAILING ADDRESS OF DEBTOR (If different from street address) |
| COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS<br>Wayne County<br>ZIP CODE 48203 | ZIP CODE |

LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR (If different from previously listed addresses)

CHAPTER OF BANKRUPTCY CODE UNDER WHICH PETITION IS FILED

☑ Chapter 7 ☐ Chapter 11

**INFORMATION REGARDING DEBTOR (Check applicable boxes)**

**Nature of Debts**
(Check **one** box.)

Petitioners believe:

☐ Debts are primarily consumer debts
☑ Debts are primarily business debts

**Type of Debtor**
(Form of Organization)

☑ Individual (Includes Joint Debtor)
☐ Corporation (Includes LLC and LLP)
☐ Partnership
☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)

______________________

**Nature of Business**
(Check **one** box.)

☐ Health Care Business
☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51)(B)
☐ Railroad
☐ Stockbroker
☐ Commodity Broker
☐ Clearing Bank
☑ Other

**VENUE**

☑ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in the District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ A bankruptcy case concerning debtor's affiliate, general partner or partnership is pending in this District.

**FILING FEE** (Check one box)

☑ Full Filing Fee attached

☐ Petitioner is a child support creditor or its representative, and the form specified in § 304(g) of the Bankruptcy Reform Act of 1994 is attached.
*[If a child support creditor or its representative is a petitioner, and if the petitioner files the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.]*

**PENDING BANKRUPTCY CASE FILED BY OR AGAINST ANY PARTNER OR AFFILIATE OF THIS DEBTOR** (Report information for any additional cases on attached sheets.)

| Name of Debtor | Case Number | Date |
|---|---|---|
| Relationship | District | Judge |

**ALLEGATIONS**
**(Check applicable boxes)**

1. ☑ Petitioner (s) are eligible to file this petition pursuant to 11 U.S.C. § 303 (b).
2. ☐ The debtor is a person against whom an order for relief may be entered under title 11 of the United States Code.

3.a. ☑ The debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a bona fide dispute as to liability or amount;

or

b. ☐ Within 120 days preceding the filing of this petition, a custodian, other than a trustee receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession

COURT USE ONLY

**Name of Debtor** Robert Trevor-Blair D[illegible]

**Case No.** ______________________

**TRANSFER OF CLAIM**

☐ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a).

**REQUEST FOR RELIEF**

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

| Petitioner | Attorney |
|---|---|
| x /s/ Andrew A. Paterson (P18690) attorney<br>Signature of Petitioner or Representative (State title) | x /s/ Andrew A. Paterson 10/19/2014<br>Signature of Attorney Date |
| Andrew A. Paterson 10/19/2014<br>Name of Petitioner Date Signed | Law Offices of Attorney Andrew A. Paterson<br>Name of Attorney Firm (If any) |
| Name & Mailing Address of Individual Signing in Representative Capacity ______ ______ | 46350 Grand River, Suite C, Novi, MI 48374<br>Address |
| | (248) 568-9712<br>Telephone No. |
| x ______<br>Signature of Petitioner or Representative (State title) | x ______<br>Signature of Attorney Date |
| ______<br>Name of Petitioner Date Signed | ______<br>Name of Attorney Firm (If any) |
| Name & Mailing Address of Individual Signing in Representative Capacity ______ ______ | ______<br>Address |
| | ______<br>Telephone No. |
| x ______<br>Signature of Petitioner or Representative (State title) | x ______<br>Signature of Attorney Date |
| ______<br>Name of Petitioner Date Signed | ______<br>Name of Attorney Firm (If any) |
| Name & Mailing Address of Individual Signing in Representative Capacity ______ ______ | ______<br>Address |
| | ______<br>Telephone No. |

**PETITIONING CREDITORS**

| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
|---|---|---|
| Andrew A. Paterson | Attorney Fees Owed | 15,000.00 |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
| Note: If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of Petitioners' Claims |

______continuation sheets attached

# EXHIBIT D

## Spinner, Ronald A.

**From:** Swanson, Marc N.
**Sent:** Friday, October 10, 2014 1:14 PM
**To:** Spinner, Ronald A.
**Subject:** FW: Request to Confer Per Federal Rules of Civil Procedure in Case No. 14-05059, Citizens United v Detroit City Council, Judge Rhodes Federal Bankruptcy Court

---

**From:** Drew Paterson [mailto:aap43@outlook.com]
**Sent:** Friday, October 10, 2014 10:53 AM
**To:** Swanson, Marc N.; raimic@detroitmi.gov
**Subject:** Request to Confer Per Federal Rules of Civil Procedure in Case No. 14-05059, Citizens United v Detroit City Council, Judge Rhodes Federal Bankruptcy Court

Counsel,

In accordance with Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure, this email is sent respectfully requesting that we immediately confer to develop a schedule for discovery in the above-captioned matter. I would like to have a conference call, if possible, this afternoon to discuss a schedule for discovery. I desire to take the depositions of all members of the Detroit City Council and would also like to issue them subpoenas for certain documents. Additionally, I would also like to issue subpoenas for documents to nonparties Kevyn Orr, Mike Duggan, and Richard Baird. Please advise as to your availability to discuss these discovery issues.

Drew Paterson
(248) 568-9712
aap43@outlook.com

# EXHIBIT E

**Swanson, Marc N.**

---

| | |
|---|---|
| **From:** | Drew Paterson <aap43@outlook.com> |
| **Sent:** | Tuesday, October 14, 2014 12:54 PM |
| **To:** | Norris, Megan P.; raimic@detroitmi.gov; Swanson, Marc N. |
| **Subject:** | Commencement of Discovery in Adversary Proceeding, Citizens United v Detroit City Council, Adv. Case No. 14-05059 Judge Rhodes |

Counsel,

As you are aware, Judge Rhodes entered an order today denying my client's request for an expedited hearing on the motion for remand (Dkt. #7936). Accordingly, until such time as Judge Rhodes issues a ruling on my client's motion for remand, pursuant to Federal Rules of Bankruptcy Procedure Rules 9027(c),(g), I am compelled to proceed as if Judge Rhodes has jurisdiction over this Open Meetings Act ("OMA") case.

Therefore, pursuant to Federal Rules of Bankruptcy Procedure Rule 9014(c), I will be immediately issuing subpoenas to nonparties Mike Duggan, Kevyn Orr, and Richard Baird for the production of pertinent documents. Although I previously sought your concurrence to convene a discovery conference for the purpose of proceeding with discovery, after further review of the Federal Rules of Bankruptcy Procedure, I have learned that the mandatory meeting before scheduling conference/discovery plan as set forth in Fed. R. Civ. P. 26(f) as incorporated by Rule 7026, is not applicable in a contested matter under Rule 9014, and therefore is unnecessary.

I will be issuing subpoenas to your clients for the production of documents. I hope that we can mutually agree upon dates for the taking depositions of your clients, including their respective staff members, so that there are no disruptions to their schedules. Please advise.

Drew Paterson
(248) 568-9712
aap43@outlook.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

CITIZENS UNITED AGAINST CORRUPT GOVERNMENT,

Plaintiff, Adv. Case No. 14-05059

v.

DETROIT CITY COUNCIL,

Defendant.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 23, 2014, he filed ***THE CITY OF DETROIT'S RESPONSE TO PETITIONERS ROBERT DAVIS' AND CITIZENS UNITED AGAINST CORRUPT GOVERNMENT'S EMERGENCY MOTION FOR REMAND OF OPEN MEETINGS ACT ("OMA") CASE AGAINST THE DETROIT CITY COUNCIL*** with the court, using the court's CM/ECF system which will send notice of the filing to all registered participants in this matter. The undersigned further certifies that on October 23, 2014, a copy of the filed document was also sent to counsel as listed below, via electronic mail and First Class United States Mail:

Andrew A. Paterson, Jr.
Paterson Law Office
46350 Grand River Ave.
Suite C
Novi, MI 48374

Email: aap43@outlook.com

DATED: October 23, 2014

By: /s/Marc N. Swanson
Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
swansonm@millercanfield.com